**FEDERAL TRADE COMMISSION,**
Petitioner-Appellee,

v.

**Jerry E. FELDMAN, President, and
Checker Taxi Company, Inc.,**
Respondents-Appellants.

No. 75–1583.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 21, 1975.

Decided Feb. 24, 1976.

Lee A. Freeman, Chicago, Ill., for respondents-appellants.

Samuel K. Skinner, U. S. Atty., Chicago, Ill., Barry R. Rubin, Atty., Federal Trade Commission, Washington, D. C., for petitioner-appellee.

Before FAIRCHILD, Chief Judge, HASTINGS, Senior Circuit Judge, and PELL, Circuit Judge.

FAIRCHILD, Chief Judge.

This is an appeal from a district court order requiring appellants Jerry L. Feldman, President, Checker Taxi Company, Inc. and Checker Taxi Company, Inc., (hereafter referred to jointly as "Checker"), to comply with subpoenas *duces tecum* issued in connection with an investigation presently being conducted by the Federal Trade Commission.[1]

Section 6(a) of the Federal Trade Commission Act (15 U.S.C. § 46(a)) authorizes the Commission "to investigate from time to time the organization, business, conduct, practices, and management of any person, partnership, or corporation engaged in or whose business affects commerce, . . . and its relation to other persons, partnerships, and corporations." Section 9 (15 U.S.C. § 49) empowers the Commission "to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation." The nature of the present investigation is, as stated in the resolution of the Commission, directing use of compulsory process, dated January 3, 1973:

To determine whether or not the activities and practices by Checker Motors Corporation, Checker Taxi Cab Company, Inc., Yellow Cab Company, Inc. (Chicago), in connection with the regulation, ownership and operation of taxi services, in commerce, are conducted in an unfair manner for the purpose or with the effect of restraining or foreclosing competition, in violation of Section 5 of the Federal Trade Commission Act (15 U.S.C. § 45).

15 U.S.C. § 45(a)(1) declares unlawful "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce."[2]

The Commission issued subpoenas *duces tecum* seeking documents dealing with the business operations of Checker, its subsidiaries and affiliates. Checker filed a motion to quash the subpoenas and to close the investigation. By order and opinion issued January 31, 1974, the Commission denied the motion. A petition for enforcement of the subpoenas was subsequently filed in the district court. On April 30, 1975, the court issued a final order granting enforcement, although reserving jurisdiction to alleviate vexation and hindrance. Checker appealed.

I

Appellants assert that the district court erred in failing to apply the doctrines of *res judicata* and collateral estoppel. They rely on the judgment and decisions reached in an action brought by the United States in the 1940's against Yellow Cab Company and others to restrain alleged violations of §§ 1 and 2 of the Sherman Act. They contend that these decisions establish, since appellants have presented affidavits showing that relevant practices have not changed, that the present FTC investigation and any complaint proceeding which could result are foredoomed to futility.

1. *Federal Trade Commission v. Jerry L. Feldman, President and Checker Taxi Company, Inc., Civil No. 74 C 2787* (N.D.Ill., filed April 30, 1975).

2. The foregoing statutory quotations reflect amendments enacted January 4, 1975.

In the *Yellow Cab Co.* action, the district court first dismissed the complaint, *United States v. Yellow Cab Co.*, 69 F.Supp. 170 (N.D.Ill.1946). The decision was reversed (in part), 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010 (1947). After trial on remand, judgment was entered for defendants, 80 F.Supp. 936 (N.D.Ill.1948). The judgment was affirmed, 338 U.S. 338, 70 S.Ct. 177, 94 L.Ed. 150 (1949). The appellants here are either identical to or successors in interest of defendants in *Yellow Cab Co.*

A similar subpoena, directed to others, but part of the same investigation, was considered in *F.T.C. v. Markin*, 391 F.Supp. 865 (W.D.Mich.1974). Pointing out that the Sherman Act claims in the earlier litigation and claims which the FTC might pursue arise under different statutes, and referring to limiting language in the Supreme Court *Yellow Cab Co.* decisions, the district court in Michigan rejected the *res judicata* claim.

■ In the instant case, the district court said:

[A] decision by this Court on the *res judicata* effects of the two *Yellow Cab* cases would seem to be premature in light of the potential differences in facts and law between those two cases and the alleged scope of the current FTC investigation. Similarly, a decision on the 'in commerce' issue would be premature. In its first *Yellow Cab* decision, the Supreme Court expressly stated that it did not intend to establish any absolute rule that local taxi service was 'beyond the reach of federal power.' 332 U.S. at 232, 67 S.Ct. 1560.

We agree with the district court.

In *U. S. v. Yellow Cab, supra*, 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010 (1947), the Court reviewed the district court's dismissal of a complaint claiming three types of violation of Sections 1 and 2 of the Sherman Antitrust Act. As to two charges, conspiracy to eliminate competition in the business of transporting passengers between different Chicago railroad stations, and conspiracy to restrain and monopolize the sale of taxicabs by control of the principal companies operating them in several cities, the Supreme Court reversed, holding that the complaint stated a cause of action under the Sherman Act. The third allegation charged Yellow Cab with conspiracy to restrain trade in the transportation of interstate travelers by taxicab between Chicago railroad stations and intra-city destinations such as homes, offices and hotels. The Court decided that this type of transportation "is too unrelated to interstate commerce to constitute a part thereof within the meaning of the Sherman Act." 332 U.S. at 230, 67 S.Ct. at 1567.

The Court said:

. . . These taxicabs, in transporting passengers and their luggage to and from Chicago railroad stations, admittedly cross no state lines; by ordinance, their service is confined to transportation 'between any two points within the corporate limits of the City.' None of them serves only railroad passengers, all of them being required to serve 'every person' within the limits of Chicago. They have no contractual or other arrangements with the interstate railroads. Nor are their fares paid or collected as part of the railroad fares. In short, their relationship to interstate transit is only casual and incidental. 332 U.S. at 230–31, 67 S.Ct. at 1567.

The Court went on to hold that "a restraint on or monopoly of that general local service, without more, is not proscribed by the Sherman Act," and that as to local service of that type, the complaint failed to state a cause of action under the Sherman Act.

On the basis of a showing by affidavit that the relevant character of their activity has not changed, appellants argue that the Commission is barred from relitigating whether practices in the operation of taxis, including advertising for drivers, constitute a restraint of competition in or affecting commerce. They would, in effect, require that in order to obtain enforcement, the FTC must at this preliminary stage, postulate factual changes in the operation of appellants' business or changes of law or relevant differences between the Sherman

Act and the FTC Act sufficient to demonstrate that an FTC proceeding could be brought in 1975 which could escape the *res judicata* defense.

Appellants take this position despite the fact that the Supreme Court, in *Yellow Cab Co.*, was very careful to limit its determination to the specific facts presented. The Court said:

> We do not mean to establish any absolute rule that local taxicab service to and from railroad stations is completely beyond the reach of federal power or even beyond the scope of the Sherman Act . . . [W]e are not to be understood in this case as deciding that all conspiracies among local cab drivers are so unrelated to interstate commerce as to fall outside the federal ken. . . . 332 U.S. at 232–33, 67 S.Ct. at 1568.

We deem it the more appropriate and orderly procedure for the Commission to proceed with the investigation within its discretion. If it ultimately issues a complaint, appellants will then have an opportunity, depending on the issues raised by the complaint, or the proof thereunder, to assert the defense of *res judicata* or collateral estoppel, if they see fit.

In *U. S. v. Yellow Cab Co.*, *supra*, 338 U.S. 338, 70 S.Ct. 177, 94 L.Ed. 150 (1949), *aff'g* 80 F.Supp. 936 (N.D.Ill.1948), the district court had determined at trial that the evidence was insufficient to support the claim that Yellow Cab conspired to restrain trade in the sale of taxicabs. The Supreme Court affirmed on the basis that the trial court's findings were not clearly erroneous, pointing out that many of the significant findings resolved issues with respect to intent in certain transactions.

Appellants point in particular to a finding by the district court in *Yellow Cab Co.* that the companies' decision to buy CCM "purpose built" cabs was a reasonable and natural business judgment which "should not, on the evidence, be disturbed by the Court." Appellants, having shown by affidavit that there is presently only one source of purpose built taxi vehicles, contend that the findings of lawful motivation of purchases made in the 1940's legally precludes the Commission's investigation in the 1970's of the motivation of more recent purchases. They contend that this has been made so clear that the court should stop the Commission's activity at the beginning of the investigation stage. This argument is even less persuasive than the earlier one.

■ It is well settled that the courts should not interrupt the administrative process except under very limited and exceptional circumstances. *See Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938). We conclude that the doctrines of *res judicata* and collateral estoppel are prematurely raised by appellants.

In discussing exhaustion of administrative remedies the Supreme Court stated in *McKart v. U. S.*, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1965):

\*   \*   \*   \*   \*   \*

> A primary purpose [of the doctrine of exhaustion of administrative remedies] is, . . . the avoidance of premature interruption of the administrative process. The agency, like a trial court, is created for the purpose of applying a statute in the first instance. Accordingly, it is normally desirable to let the agency develop the necessary factual background upon which decisions should be based. And since agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise . . . [I]t is generally more efficient for the administrative process to go forward without interruption than it is to permit the parties to seek aid from the courts at various intermediate stages. . . . 395 U.S. at 193–94, 89 S.Ct. at 1662.

The courts have been reluctant to interfere in the investigative stage of the administrative process. In *Okla. Press Pub. Co. v. Walling*, 327 U.S. 186, 214, 66 S.Ct. 494, 508, 90 L.Ed. 614 (1946), the Supreme Court stated:

. . . Congress has authorized [the agency], rather than the District Courts in the first instance, to determine the question of coverage in the preliminary investigation of possibly existing violations; . . . to exercise [the agency's] subpoena power for securing evidence upon that question . . . and, in case of refusal to obey [the agency's] subpoena, to have the aid of the District Court in enforcing it. . . .

In reference to the *Oklahoma Press* decision, the court, in *FTC v. Gibson*, 460 F.2d 605, 608 (5th Cir. 1972), stated:

The rationale of the *Oklahoma Press* rule is that it allows enforcement of subpoenas where the evidence necessary to establish the interstate nature of the commerce involved is in the possession of the suspected violator and can be secured only by . . . a subpoena. Under this rule appellants may not litigate the jurisdictional issue as a defense in a subpoena enforcement proceeding.

■ In *Borden, Inc. v. FTC*, 495 F.2d 785, 786–87 (7th Cir. 1974) we noted the situations in which a party may bypass the administrative process. These situations arise when:

(1) the agency has clearly violated a right secured by statute or agency regulation, *Leedom v. Kyne*, 358 U.S. 184, 188–189, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958); *Elmo Division of Drive-X Company v. Dixon*, 121 U.S.App.D.C. 113, 348 F.2d 342, 346–347 (1965); (2) the issue involved is a strictly legal one not involving the agency's expertise or any factual determinations, *Jewell Companies, Inc. v. F.T.C.*, 432 F.2d 1155, 1159 (7th Cir. 1970); *McKart v. United States*, 395 U.S. 185, 197–199, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); or (3) the issue cannot be raised upon judicial review of a later order of the agency, *Jewel,* supra, at 1159.

In the instant case the FTC is conducting an investigation to determine whether there are violations of section 5 of the Federal Trade Commission Act (15 U.S.C. § 45). The subpoenas represent the Commission's attempt to obtain factual information needed in the development of a decision as to what, if any, action should be taken, and for use in a proceeding if instituted. Interpretation of this factual information necessarily involves agency expertise and discretion. The Commission is aware, of course, of the *Yellow Cab Co.* case and will doubtless give consideration to the effect it would be expected to have on any proceeding the Commission might bring.

Appellants rely on two decisions which applied the doctrine of *res judicata* in a second proceeding by an agency of the federal government so as to give conclusive effect therein to a determination made in an earlier proceeding brought by a different federal agency against the same party. As a result the court vacated a cease and desist order of the FTC in *George H. Lee v. Federal Trade Commission*, 113 F.2d 583 (8th Cir. 1940), and affirmed an order dismissing a proceeding for condemnation of a product on the ground of false labeling in *United States v. Willard Tablet Co.*, 141 F.2d 141 (7th Cir. 1944). Neither decision is authority for a court's interfering at the investigative stage of an administrative proceeding on the theory that a decision in some earlier case conclusively establishes a determination that there can be no merit in a proceeding growing out of the investigation. In each of the cases cited, the doctrine of *res judicata* was applied to a proceeding which had ripened to a point that the issues had been developed.

*Safir v. Gibson*, 432 F.2d 137 (2d Cir. 1970) is a case in which a court applied the doctrine of *res judicata* to an administrative proceeding without waiting until a final order was ready for review. *Safir* is easily distinguished from the instant case.

The federal Maritime Commission found that certain subsidized members of a steamship conference had set unreasonably low rates in an effort to drive out competitors and thereby violated 46 U.S.C. § 814. Safir brought action to compel the Maritime Administration to recover subsidies paid to the offenders. When the case first reached the Court of Appeals, the court decided that the Administration was required to make a con-

sidered decision whether to recover the subsidies. *Safir v. Gibson*, 417 F.2d 972 (2d Cir. 1969). The Administration concluded that it should begin by determining, in effect, whether the rates had been unfair or unduly discriminatory. In the second *Safir* decision, the Court of Appeals directed the district court to instruct the Administration not to redetermine the issue previously decided (although in the context of a different statute) by the Commission.

The Court of Appeals recognized the "general rule against judicial interference with administrative proceedings prior to the issuance of a final order," but felt there were two features of the case rendering appropriate the immediate application of *res judicata* and estoppel principles. One was the need to protect the party who succeeded in the first proceeding "from being vexed with needlessly duplicitous proceedings." The other was that the proceeding before the Administration was being carried on virtually as if in response to an order of the court, and if such order had issued, "the court would have had discretionary power to modify or clarify it if such action appeared necessary because the agency misunderstood the nature of the proceeding required." Clearly the peculiarities of the *Safir* situation are not present here.

In *F.T.C. v. Texaco, Inc.*, 170 U.S.App. D.C. 323, 517 F.2d 137 (D.C.Cir.1975), *vacated and reh'g en banc granted Feb. 6, 1976*, the district court had limited FTC subpoenas of data on natural gas reserves, taking into consideration a previous investigation made by FPC and findings resulting therefrom. The FPC had found in 1970 that certain estimates of proved reserves of natural gas were valid and accurate. The FTC, in late 1971, issued subpoenas requiring production, apparently of "*all* reserve records in order to determine the total gas reserves of the area. Since the Power Commission had already determined that AGA figures were accurate, the [district] court was of the view that the Trade Commission could not force the producers to relitigate the matter and that, in any event, it would

be unduly *burdensome* to permit yet another plenary investigation (for the third time in two years) of natural gas reserves." 517 F.2d at 144.

The Court of Appeals affirmed. After concluding that the application of collateral estoppel would be appropriate in the case, the court held that the district court was entitled to conclude that FTC desired all data in order to recompute independently the area reserves and that the FPC, after a contested hearing, had found the industry's figures for the relevant years were accurate. In the light of these findings, the district court "has drawn a reasonable balance" between the needs and interests of the parties.

Although the panel decision, now vacated, supported the propriety of consideration if not total application of the doctrine of collateral estoppel in judicial limitation of administrative subpoenas in a pending investigation, without awaiting a final order, it seems clear that in upholding such limitation by the district court the panel was impressed by the closeness in time between the determination of the particular fact by FPC and the proposed re-examination of the same fact by FTC.

In the case before us now, more than twenty-five years have elapsed since the earlier determinations. Not only may the immediate facts and circumstances as to the activities and practices of Checker have changed in the interim, but the more general economic and social considerations which mold views as to whether activities and practices affect interstate commerce may have changed significantly.

**II**

█ Appellants also claim that the Commission's investigation is an improper attempt to invade the regulatory authority of the City of Chicago. They contend that because the city has enacted certain ordinances providing for the regulation of local taxicab services, any activities undertaken which adhere to the regulatory scheme cannot form the basis of an antitrust violation.

Appellants rely on *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), in which the Supreme Court determined that imposition by the state of a state marketing program which sought to stabilize raisin production and maintain prices did not conflict with the Sherman Act. The Court reasoned that because the marketing program derived its authority from the legislative command of the state it was in effect state action and not intended to be covered by the Sherman Act. 317 U.S. at 350–52, 63 S.Ct. 307.

We find this challenge premature. Whatever effect the *Parker v. Brown* doctrine might have in an FTC proceeding against Checker could be determined only when the issues in such proceeding become known and even then could probably not be the proper subject of judicial examination until review of a final order of FTC.

### III

 Appellants' final claim is that the district court failed to exercise proper judicial supervision by refusing to limit or foreclose certain specifications of documents required to be produced. The challenged specifications, paragraphs 10 through 15, call for details as to levels of compensation for drivers, trips performed in sample periods, identification, leaves, and compensation of each driver, labor agreements and training programs.

We are not persuaded that these specifications are clearly irrelevant to an investigation within the Commission's power. *See F.T.C. v. Standard American, Inc.,* 306 F.2d 231, 234–35 (3rd Cir. 1962).

The district court recognized the possibility that production of evidence in the detail specified might be shown to be more burdensome in some instances than the degree of relevance of particular items justified. The court provided in its order:

> The parties will, prior to the production of evidence, pursuant to the Federal Trade Commission's offer, meet in a good faith effort to modify the subpoena's terms so as to make compliance with its

specifications not unduly burdensome on respondents.

In the event that compliance with the subpoena's terms becomes patently vexatious and serious hindrance to the pursuit of respondent's business, the parties may file the appropriate supplemental motions, fully supported by briefs, and the Court will reconsider those specifications thus put in issue in supplemental proceedings.

The order appealed from is affirmed.