FEDERAL TRADE COMMISSION,
Petitioner-Appellee,

v.

Ralph H. MILLER, President, et al.,
Respondents-Appellants.

No. 76–1499.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 21, 1976.

Decided Jan. 24, 1977.

As Amended on Denial of Rehearing
March 16, 1977.

John C. Christie, Jr., Chicago, Ill., Paul D. Borghesani, Elkhart, Ind., for respondents-appellants.

Robert J. Lewis, Jr., Gen. Counsel, Denis E. Hynes, Atty., F. T. C., Washington, D. C., John R. Wilks, U. S. Atty., Fort Wayne, Ind., for petitioner-appellee.

Before CLARK, Associate Justice (Retired),* SPRECHER and TONE, Circuit Judges.

TONE, Circuit Judge.

The issues before us are whether common carries subject to the Interstate Commerce Act are exempt from the Federal Trade Commission's investigatory power and, if so, whether that exemption may be asserted by a carrier as a defense in a subpoena enforcement proceeding. The District Court answered the second question in the negative and ordered enforcement of subpoenas the FTC had served. We reverse.

Respondent Morgan Drive Away, Inc. is a common carrier engaged in the business of transporting mobile homes. As such it is subject to regulation under Part II of the Interstate Commerce Act, 49 U.S.C. § 301, et seq., and operates pursuant to a certificate of public convenience and necessity issued by the Interstate Commerce Commission.

In January 1974 the Federal Trade Commission adopted a resolution authorizing an investigation to determine whether Morgan and unnamed parties were engaged in violations of § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, "including false and misleading advertising or misrepresentation in connection with the solicitation of persons to become owner-operators in the nationwide mobilehome [sic] transporting industry." The resolution recited that the investigation was being conducted under the authority of §§ 6, 9, and 10 of the Act, 15 U.S.C. §§ 46, 49, and 50. The Commission issued and served a subpoena duces tecum upon respondent Ralph H. Miller, Morgan's President, and a subpoena ad testificandum upon respondent Bill R. Privitt, Morgan's Executive Vice President, each subpoena reciting that the witness was "to testify in connection with the Commission's investigation of Morgan Drive Away, Inc.," authorized by the resolution.

Morgan's motion to quash the subpoenas on the ground that it is statutorily exempt from FTC regulation and investigation was denied by the Commission. Upon being advised that respondents, relying upon the advice of counsel, did not intend to comply with the subpoenas, the Commission filed this enforcement action in the District Court pursuant to § 9 of the Act, 15 U.S.C. § 49. From the judgment granting enforcement, respondents appeal.

As we have noted, the purpose of the Commission's investigation was to determine whether Morgan "and others" may be violating § 5, which prohibits "[u]nfair methods of competition . . . and unfair or deceptive acts or practices in or affecting commerce," and also provides, in subsection (a)(2), as follows:

"The Commission is empowered and directed to prevent persons, partnerships, or corporations, except banks, common carriers subject to the Acts to regulate commerce, air carriers and foreign air carriers subject to the Federal Aviation Act of 1958, and persons, partnerships, or corporations insofar as they are subject to the Packers and Stockyards Act, 1921, as amended, except as provided in section 406(b) of said Act, from using unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(2) (Supp. V, 1975).

The phrase "Acts to regulate commerce" is defined in § 4 of the Act to include "the Act entitled 'An Act to regulate commerce', approved February 14, 1887, and all Acts amendatory thereof and supplementary thereto." 15 U.S.C. § 44. The note to this section in the United States Code points out that the date should be corrected to February 4, 1887 and states that the Act of that date "is classified to chapters 1, 8, 12, 13 and 19 of Title 49, Transportation." Those

---

* The Honorable Tom C. Clark, Associate Justice (Retired) of the Supreme Court of the United States, is sitting by designation.

chapters contain what is now known as the Interstate Commerce Act.[1] Morgan, as we have said, is regulated and holds a certificate under Part II of that Act, Chapter 8 of Title 49, dealing with motor carriers.

Section 6 of the Federal Trade Commission Act, on which, with §§ 9 and 10 of that Act, the Commission based its authority to investigate whether Morgan was violating § 5, gives the Commission, in subsection (a), the power

"[t]o gather and compile information concerning, and to investigate from time to time the organization, business, conduct, practices, and management of any person, partnership, or corporation engaged in or whose business affects commerce, excepting banks and common carriers subject to the Act to regulate commerce, and its relation to other persons, partnerships, and corporations." 15 U.S.C. § 46(a) (Supp. V, 1975).

Subsection (b) of § 6 authorizes the Commission to require

". . . corporations, engaged in or whose business affects commerce, excepting banks and common carriers subject to the Act to regulate commerce, or any class of them, or any of them, respectively, to file with the Commission in such form as the Commission may prescribe . . . reports or answers in writing to specific questions, furnishing to the Commission such information as it may require as to the organization, business, conduct, practices, management, and relation to other corporations, partnerships, and individuals of the respective . . corporations filing such reports or answers in writing." 15 U.S.C. § 46(b) (Supp. V, 1975).

Section 9 of the Act authorizes the issuance of subpoenas by the Commission for the purposes of §§ 5 and 6, *inter alia,* and authorizes their enforcement by proceed-

ings in the district courts. Section 10, the final section mentioned in the resolution authorizing the Morgan investigation, provides for penalties for failure to comply with subpoenas and investigative orders.

## I.

Respondents concede that any right they may assert to resist the enforcement of the subpoenas must be found in § 6 of the Act, which deals with the Commission's investigatory power. They also concede that if they were insisting only on the right not to be regulated, as distinguished from the right not to be investigated, the strong policy against litigating the issue of coverage under the Act in a subpoena enforcement proceeding, discussed in Part III, below, would make their present position untenable. Nevertheless, the words used in § 5 are relevant to a consideration of § 6. *Cf.* R. Dickerson, *The Interpretation and Application of Statutes* 219 (1975).

We begin, as we must, with the words of the statute.[2] The common-carrier exemptions in §§ 5 and 6 have been in those sections since the adoption of the Act in 1914, ch. 311, 38 Stat. 717, and remain unchanged. In § 5 "common carriers subject to the Acts to regulate commerce" are expressly excepted from the class of "persons, partnerships, or corporations" which the Commission is empowered "to prevent . . . from using unfair methods of competition . . . and unfair or deceptive acts or practices in or affecting commerce." The words "Acts to regulate commerce" are defined in § 4 to include the Interstate Commerce Act, as amended. Morgan is a common carrier subject to that Act. The exemption is in terms of status as a common carrier subject to the Interstate Commerce Act, not activities subject to regulation under that Act. In contrast, the Packers and Stockyards Act exemption in

1. The title of "An Act to regulate commerce," 24 Stat. 379 (1887), was changed to the "Interstate Commerce Act" in 1920. Act of Feb. 28, 1920, ch. 91, § 441, 41 Stat. 499.

2. "Though we may not end with the words in construing a disputed statute, one certainly be-

gins there," and "[v]iolence must not be done to the words chosen by the legislature." F. Frankfurter, *Some Reflections on the Reading of Statutes,* 47 Colum.L.Rev. 527, 535, 543 (1947).

§ 5 is only for "persons, partnerships, or corporations insofar as they are subject to" that Act.

■ The exemption in § 6 of the Act is likewise cast in terms of status. The investigatory power conferred by subsections (a) and (b) extends to "any . . . corporation engaged in or whose business affects commerce, excepting banks and common carriers subject to the Act to regulate commerce." We find no significance in the use of the singular "Act" in § 6, on which the Commission relies as indicating an intention to limit the exemption in that section to railroads.[3] The note to this section in the United States Code is similar to the note to § 5 and states as follows:

> "The Act to regulate commerce, referred to in subsecs. (a) and (b), consists, as provided by section 44 of this title, of the Interstate Commerce Act, which is classified to chapters 1, 8, 12, 13 and 19 of Title 49, Transportation, . . . ."

Chapter 8 of Title 49 is, as we have said, Part II of the Interstate Commerce Act. The omission of the "s" in § 6 appears, like the incorrect date for the 1887 Act in § 4, to have been an inadvertent error which was not significant enough, or indeed noticeable enough, to be corrected when the Act was amended from time to time for reasons having nothing to do with the common-carrier exemptions. Moreover, even if the singular "Act" is viewed as an intentional reference to the 1887 Act, the case would be governed by the usual rule that a statutory reference to an earlier statute is construed to include amendments to that statute. *Steffler v. Johnston*, 121 F.2d 447, 448 (9th Cir.), *cert. denied*, 314 U.S. 676, 62 S.Ct. 187, 86 L.Ed. 541 (1941). To hold otherwise would be to impute to Congress the incongruous intention of incorporating into a new statute provisions of the superseded, rather than the current, version of the earlier statute.

■ The Commission makes two other arguments based on the language of the statute, both of which we find unpersuasive. The first is that, because the exemption in §§ 5 and 6 is not repeated in § 9's grant of subpoena power, it can subpoena Morgan's officers even if an investigation of that company is outside its jurisdiction. Section 9, however, expressly limits the agency's subpoena power to testimony and evidence "relating to any matter under investigation." The cases the agency cites in support of its interpretation all assume that this provision contemplates only investigations authorized by § 6. Most of them dealt with the Commission's power to subpoena third parties who were not themselves the subject of an investigation or proceeding admittedly within the Commission's jurisdiction. *E. g.*, *FTC v. Tuttle*, 244 F.2d 605 (2d Cir.), *cert. denied*, 354 U.S. 925, 77 S.Ct. 1379, 1 L.Ed.2d 1436 (1957); *FTC v. Harrell*, 313 F.2d 854 (7th Cir. 1963); *United States v. Marshall Durbin & Co.*, 363 F.2d 1, 5 (5th Cir. 1966). Section 9 does not authorize the issuance of subpoenas in connection with an investigation which the Commission is not empowered to make by reason of the exemption in § 6.

■ The Commission also argues that § 6(f), which authorizes it to report to Congress and to submit recommendations for legislation, may provide a basis for investigating Morgan.[4] The Commission's resolution authorizing the subpoenas stated, however, that the purpose of the investigation was "to determine whether or not Morgan Drive Away, Inc. and others may be engaged in unfair or deceptive acts or practices . . . in violation of Section 5." Having treated this action from the beginning as a routine investigation leading to enforcement, the agency cannot, at this late date, recharacterize it in order to circumvent its lack of investigatory power.

## II.

Thus, the words of the Act plainly exempt from the agency's investigatory juris-

---

3. This argument appears to have been advanced for the first time in this court.

4. This argument, like the one referred to at note 3, appears to have been advanced for the first time in this court.

diction any corporation holding the status of a common carrier regulated by the ICC. The agency concedes that Morgan meets this description, but argues that we should defer to its interpretation of the Act and reject the literal construction. In support of this contention, the Commission draws a distinction between the broad, remedial purpose underlying its power to investigate and the narrow purpose of avoiding interagency conflicts that underlies the exemption from that power, and argues that it is at least permissible for it to construe the exemption as being limited by its purpose. Thus, where there is no possibility of interagency conflict, because the ICC cannot or does not regulate the particular activity in question, the agency contends that there should be no exemption.

We recognize the weight to be given the agency's interpretation of its own enabling legislation.[5] E. g., *Zemel v. Rusk,* 381 U.S. 1, 11, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965); *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). The courts, however, may not abdicate their independent responsibility to construe the statutory language. *Volkswagenwerk v. FMC,* 390 U.S. 261, 272, 88 S.Ct. 929, 19 L.Ed.2d 1090 (1968); *Zuber v. Allen,* 396 U.S. 168, 193, 90 S.Ct. 314, 24 L.Ed.2d 345 (1969); *General Electric Co. v. Gilbert,* 429 U.S. 125, 145, 97 S.Ct. 401, 50 L.Ed.2d

343 (1976). Those circumstances which have been found to enhance the weight to be given an administrative interpretation are absent here. To begin with, the statutory language is not ambiguous. See *General Electric Co. v. Gilbert, supra,* 429 U.S. at 142–145, 97 S.Ct. 401; *Zuber v. Allen, supra,* 396 U.S. at 192, 90 S.Ct. 314. Nor is the administrative interpretation, having been arrived at more than 60 years after the adoption of the statute, either contemporaneous, see, *e. g., Zuber v. Allen, supra,* 396 U.S. at 192, 90 S.Ct. 314, or long standing, see, *e. g., Saxbe v. Bustos,* 419 U.S. 65, 74, 95 S.Ct. 272, 42 L.Ed.2d 231 (1974); *United States v. American Trucking Associations, Inc.,* 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940). Finally, the agency's interpretation has not been consistent. See *Morton v. Ruiz,* 415 U.S. 199, 237, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974); *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 858–859 n.25, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975); *General Electric Co. v. Gilbert, supra,* 429 U.S. at 142–143, 97 S.Ct. 401. As we shall see, not long ago the Commission, in a presentation to a congressional committee, gave the statutory exemptions an interpretation opposite to the one it now asserts. For these reasons we are not bound by the Commission's interpretation of the statute.

The FTC cites legislative history[6] and case law, *e. g., Crosse & Blackwell Co.*

---

5. We do note, however, that the interpretive function in this case was not quite the same as it was in those cases cited by the Commission in which Congress had deliberately, in § 5 of the Act, used broad terms with a view to having the agency apply them "to particular business situations." *E. g., Atlantic Refining Co. v. FTC,* 381 U.S. 357, 367, 85 S.Ct. 1498, 14 L.Ed.2d 443 (1965). (Even in such cases, "while informed judicial determination is dependent upon enlightenment gained from administrative experience, in the last analysis the words 'deceptive practices' set forth a legal standard and they must get their final meaning from judicial construction." *FTC v. Colgate-Palmolive Co.,* 380 U.S. 374, 385, 85 S.Ct. 1035, 1043, 13 L.Ed.2d 904 (1965).) Nor is that function here quite the same as in those cases where Congress directs or contemplates adoption by the agency of rules, regulations, or interpretative rulings interpreting the statute. *E. g., Train v. Natural Resources Defense Council, Inc.,* 421 U.S. 60, 87, 95 S.Ct. 1470, 43

L.Ed.2d 731 (1975); *American Meat Inst. v. EPA,* 526 F.2d 442 (7th Cir. 1975).

6. The agency cites the following passages, in which Rep. Stevens, a manager of the House bill, discussed the scope of the common-carrier exemption from the FTC's jurisdiction to regulate and investigate unfair methods of competition:

". . . where a railroad company engages in work outside of that of a public carrier . . . such work ought to come within the scope of this commission for investigation." "Yes; every corporation engaged in commerce [is included in the statute's definition of 'corporation'] except common carriers, and even as to them I do not know but that we include their operations outside of public carriage regulated by the interstate-commerce acts."

51 Cong.Rec. 8996 (1914).

*v. FTC,* 262 F.2d 600 (4th Cir. 1959), to support the proposition that § 6's exemption was never intended to apply to common carriers when they engaged in non-carrier activities. It argues that the rationale behind this limitation was that in such cases the carrier's activities were not within the scope of ICC regulation, and thus the purpose of the FTC Act would be frustrated if the exemption were applied. The same analysis, the Commission contends, can be applied to its power under the Wheeler-Lea Amendment to the FTC Act to protect consumers by investigating and regulating deceptive advertising practices. Act of March 21, 1938, ch. 49, § 3, 52 Stat. 111. The agency points to its expertise in dealing with such practices and to Congress' perception of the desirability of having a single agency regulate in this area.[7] It then argues that, because the ICC does not and perhaps cannot regulate the advertising practices of common carriers and because a gap in regulation would frustrate the legislative purpose in enacting the Amendment, the exemption cannot be applied to bar the instant investigation.

■ We need not decide whether the FTC is correct in its statement that the non-carrier activities of a common carrier do not fall within the scope of the § 6 exemption. Assuming that to be correct, it does not follow that a corporation engaged solely in carrier activities steps outside the exemption whenever those activities are not of a type ordinarily regulated by the ICC. The regulatory approach articulated by the Commission, while it may be a desirable

one, is not the one Congress appears to have adopted. Before the Wheeler-Lea Amendment, § 5(a)(1) of the Act had declared unlawful, and then § 5(a)(6) of the Act (renumbered in 1975 as § 5(a)(2)) had empowered the Commission to prohibit, only "unfair methods of competition in commerce." The Amendment inserted in both those subsections the additional words "and unfair or deceptive acts or practices in commerce." It did not, however, alter in any way the exemption provisions of the latter subsection or of § 6. Thus, as amended, § 5 declares unlawful both anticompetitive practices and unfair or deceptive acts or practices and, further, empowers the Commission to prevent persons, except regulated common carriers (and certain others), from engaging in the conduct declared unlawful. There is no conceivable basis for holding that the exception applies to one type of forbidden conduct but not the other. The Commission's argument must therefore fail, and, having failed with respect to § 5(a)(2), it necessarily fails with respect to § 6(a) as well.

The Commission's argument, moreover, is based on a questionable assumption, *viz.,* that Congress contemplated and intended a perfect correlation between the end sought (avoidance of inter-agency conflict) and the means adopted (the exemption) so that there would be no gap in the regulatory framework. Subsequent legislative history, however, tends to refute that assumption. First, in 1975 Congress added § 57a(f) to the FTC Act to eliminate an identical gap that existed with regard to banks. Act of

7. H.Rep. No. 1613, 75th Cong., 1st Sess. 5 (1937):

"The Federal Trade Commission has the machinery and trained personnel to investigate in a proceeding against false advertising of all industries and all commodities. The common motive of false advertisement is the same in every line of industry, to gain an economic advantage through defrauding or misleading the purchaser. This method of protecting the public should be harmonized and unified under one organization with consistent and uniform methods of enforcement and penalization. Efficiency, uniformity, and economy suggest this course. This legislation is framed with that purpose in mind."

The Commission's emphasis on its pre-eminent role in this field is supported by the structure of 15 U.S.C. § 57a(f), cited below: under that section, the FTC is to be the leader in consumer protection matters, with the Federal Reserve Board following unless the regulation in question would be inappropriate for financial institutions. However, that subsection does not support the conclusion that the Commission would have us draw from its leadership position: while the new subsection augments the FTC's influence, it does not enlarge the Commission's jurisdiction and banks remain exempt from FTC investigation and regulation.

Jan. 4, 1975, Pub.L. No. 93–637, title II, § 202(a), 88 Stat. 2193, codified in 15 U.S.C. § 57a(f) (Supp. V, 1975). The Committee that formulated the legislation stated,

> "Under the Federal Trade Commission Act the Commission does not have authority to regulate banks. This legislation does nothing to change this situation. However, your committee is mindful that some acts or practices of banks can be unfair or deceptive to consumers." H.Rep. No. 1107, 93d Cong., 2d Sess., in 1974 *U.S.Code Cong. & Adm.News* at 7702, 7729.

In order to remedy this problem, the Federal Reserve Board was empowered, and indeed required, to promulgate regulations adapted for banks and other financial institutions from regulations already promulgated by the FTC. Three agencies were empowered to enforce these regulations: the Federal Reserve Board itself, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation. In erecting such a statutory scheme, Congress demonstrated its adherence to its traditional policy of dividing regulatory responsibilities along industry lines, rather than, as the FTC suggests, on the basis of particular activities. Moreover, because the statutory exemption for banks is coextensive with the exemption for common carriers, Congress' recognition of a regulatory gap with respect to banks is implicitly a recognition of such a gap with respect to common carriers as well.

■ Second, in 1973 Congress added the following proviso to § 6 of the Federal Trade Commission Act:

> "*Provided,* That the exception of 'banks and common carriers subject to the Act to regulate commerce' from the Commission's powers defined in clauses (a) and (b) of this section, shall not be construed to limit the Commission's authority to gather and compile information, to investigate, or to require reports or answers from, any person . . . to the extent

that such action is necessary to the investigation of any person, partnership, or corporation . . . which is not engaged or is engaged only incidentally in banking or in business as a common carrier subject to the Act to regulate commerce." 15 U.S.C. § 46 (Supp. V, 1975). Inserted as a part of the Alaska Pipeline Bill, this proviso was intended primarily to augment the FTC's powers to investigate oil companies. Prior to the amendment, such investigations had been hampered by the apparent inability of the FTC to subpoena the records of pipeline companies, which are common carriers subject to ICC regulation. 119 Cong.Rec.H. 9814 (Nov. 13, 1973). The proviso allows the FTC to subpoena such records in aid of a third-party investigation; it would also seem to allow investigation of companies which are marginally involved in a common-carrier business. The proviso does not, however, allow the agency to investigate all of a corporation's noncarrier activities. Rather, it implies that, where a corporation is more than "incidentally" involved in the common-carrier business, all its activities are immune from FTC scrutiny. As such, it casts considerable doubt on the main premise of the FTC's argument, *i. e.,* that a carrier's activities may be investigated whenever they exceed the boundaries of ICC control.

The Commission itself took a view of the statute contrary to the one it now espouses in 1975 when it presented testimony before a Senate Committee in support of a bill to delete the common-carrier exemption completely from § 5 of the Act. S. 642, 94th Cong., 1st Sess. Testifying on behalf of a "unanimous Commission," the Director of the Bureau of Consumer Protection asked that the exemption be deleted from § 6 as well so that the "unfortunate gap" arising from the ICC's failure to regulate common carriers fully could be eliminated. Hearings on S. 642 before the Sen.Comm. on Commerce, 94th Cong., 1st Sess. 73 (1975).[8] As we have already observed, this inconsist-

8. When the bill was reported out of committee, the provision deleting the exemption had been dropped.

ent agency pronouncement hardly adds weight to the interpretation of the Act the Commission now urges on the court.

■ Finally, we note that a variation of the FTC's argument to this court was rejected by the Supreme Court in *United States v. Philadelphia National Bank*, 374 U.S. 321, 336 n.11, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963). In that case one issue was whether banks were subject to the FTC's jurisdiction under § 11 of the Clayton Act, 15 U.S.C. § 21, which empowers the Federal Reserve Board to enforce the Act "where applicable" to banks and the FTC to enforce it "where applicable" to "all other character of commerce." The Federal Reserve Board had no authority to regulate bank mergers, and therefore it was argued that Congress must have intended the FTC to have that power. In the absence of any "intimation in the legislative history of the 1950 amendment to §§ 7 and 11 that the FTC's traditional lack of jurisdiction over banks was to be disturbed," the Court rejected the argument that Congress could not have intended to create a regulatory gap. Similarly, in the case at bar, the FTC has failed to point to anything in the legislative history of the FTC Act suggesting that Congress intended the clear language of the common-carrier exemption to be tortured into a limitation only upon ICC-regulated activities. Thus, we hold that, having conceded Morgan's common-carrier status, the FTC is without jurisdiction to investigate that company.

### III.

We turn now to whether Morgan's immunity under § 6 may properly be asserted in a subpoena enforcement proceeding, despite the doctrine of *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946). In *FTC v. Feldman*, 532 F.2d 1092, 1096 (7th Cir. 1976), Chief Judge Fairchild set out three situations in which the *Oklahoma Press* rule prohibiting litigation of coverage issues in subpoena-enforcement proceedings does not apply:

"(1) the agency has clearly violated a right secured by statute or agency regulation, *Leedom v. Kyne*, 358 U.S. 184, 188–189, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958); *Elmo Division of Drive-X Company v. Dixon*, 121 U.S.App.D.C. 113, 348 F.2d 342, 346–347 (1965); (2) the issue involved is a strictly legal one not involving the agency's expertise or any factual determinations, *Jewel Companies, Inc. v. F.T.C.*, 432 F.2d 1155, 1159 (7th Cir. 1970); *McKart v. United States*, 395 U.S. 185, 197–99, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); or (3) the issue cannot be raised upon judicial review of a later order of the agency, *Jewel, supra*, at 1159."

In the case at bar, all three of these standards are met. First, as we have held, Morgan has a clear right, conferred upon it by statute, to be free from FTC investigation. Second, the only factual question that could possibly arise, given our view of the statute—*i. e.*, whether Morgan possesses the status of a common carrier—has already been conceded by the agency. Finally, because the right asserted is the right to be free from investigation—and not from regulation—it can never be effectively protected on review of a later order. Once conducted, the investigation would be a *fait accompli* for which Morgan would have no remedy. This would be so whether the investigation was followed by an agency decision to take no action or by a cease and desist order. Refusal of a court to enforce that order would not undo the investigation.

■ Because the case at bar meets these three tests, it is not governed by the *Oklahoma Press* doctrine. This is not a case in which the respondent argues that it is not within the category of entities the agency is clearly empowered to regulate. *E. g., Endicott Johnson Corp. v. Perkins*, 317 U.S. 501 (1943); *FTC v. Gibson*, 460 F.2d 605, 608 (5th Cir. 1972); *United States v. Feaster*, 376 F.2d 147 (5th Cir. 1967); *NLRB v. Northern Trust Co.*, 148 F.2d 24 (7th Cir.), cert. denied, 326 U.S. 731, 66 S.Ct. 38, 90 L.Ed. 435 (1945). See also *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938). In such a case the issue is the essentially factual one

of classification. Here, the classification has been conceded and the issue is the purely legal one of whether or not any corporation within that category may be subjected to agency investigation.

To say that the issue is one of statutory construction, however, does not end the analysis. The Commission cites three such cases in which courts have granted enforcement of subpoenas, holding in effect that the primary responsibility for interpreting the statute rested with the agency. Yet these cases too are distinguishable from the case at bar. In *Crafts v. FTC,* 244 F.2d 882 (9th Cir. 1957), the issue was the FTC's power to subpoena an insurance company's records pursuant to an investigation of its advertising practices. The Ninth Circuit held that the McCarran-Ferguson Act, 15 U.S.C. §§ 1011–1012, which withdraws authority from the FTC over insurance companies "to the extent" that such companies are regulated by state law, required the district court to deny enforcement. The Supreme Court summarily reversed, 355 U.S. 9, 78 S.Ct. 33, 2 L.Ed.2d 23 (1957), citing *Endicott Johnson Corp. v. Perkins, supra,* 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424, and *Oklahoma Press Publishing Co. v. Walling, supra,* 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614. In such a case, where one agency's power to regulate depends on the absence of regulation by another, allowing the agency to make the primary jurisdictional determination is clearly the preferable solution.[9] The case at bar, however, does not fall into this category because, as we noted in Part II, the FTC's power to investigate common carriers is not tied to the ICC's powers in this area.

In *SEC v. Brigadoon Scotch Distributing Co.,* 480 F.2d 1047, 1052 (2d Cir. 1973), one issue was whether the deletion of a certain phrase from the Securities Act, 15 U.S.C.

§ 77b(1), had withdrawn the warehouse receipts sold by respondents from the category of "securities" subject to SEC regulation. That determination depended on whether the receipts were within the scope of the original statutory language and, if so, what the intent of Congress had been in deleting that part of the definition. Presented with both a fact question and the necessity of interpreting an ambiguous statutory provision, the court deferred its consideration until after the agency had taken some reviewable action. In the case at bar, on the other hand, there are no fact questions remaining and the statutory provision in question is clear on its face.

Finally, in *SEC v. Wall Street Transcript Corp.,* 422 F.2d 1371 (2d Cir. 1970), the issue was whether a trade journal was exempt as a "bona fide" newspaper from the fiduciary duties of an investment adviser under the Investment Advisers Act of 1940, 15 U.S.C. § 80b–2(a)(11)(D). The district court, finding that respondent was undeniably a newspaper, denied enforcement of the agency's subpoenas. The Court of Appeals reversed, holding that the definition depended on the nature of the practices involved and not on whether the normal indicia of a newspaper business were present. In so holding, the Second Circuit accepted an interpretation of the statute there involved that we have found unsupported by the legislative history of the statute before us in this case, *viz.,* that the exemption should be defined in terms of the need to regulate certain activities rather than in terms of the status of the entity to be regulated. *Id.* at 1377.

A final distinction between the cases cited by the Commission and the case at bar is that in the former the right asserted was always the right to be free from regulation. Such a right, as we noted above, can be fully protected by judicial review of an

---

**9.** While at first glance determining the boundaries of an agency's jurisdiction might seem simple, the briefs presented in this appeal show that is not always the case. Respondents argue that the ICC has in the past regulated carriers' advertising practices and has indicated in the Federal Register its intention to do so more fully in the future. The FTC, on the

other hand, argues that past ICC regulation in this area has been negligible and points to a letter addressed to it from the ICC stating that the latter believes itself without power to regulate deceptive advertising practices. We, of course, have no occasion to decide this issue, given our view of the statute.

agency order actually imposing some kind of regulation. Until the entry of the order, "even if the agency request is motivated by 'nothing more than official curiosity,' the subpoena is enforceable because agencies have a legitimate interest in seeing that the law and the public interest are maintained—*assuming, of course, that the agency is acting within its authority* and the information requested is relevant to the inquiry." (Emphasis added.)

*SEC v. Brigadoon Scotch Distributing Co.,* supra, 480 F.2d at 1053, citing *United States v. Morton Salt Co.,* 338 U.S. 632, 652, 70 S.Ct. 357, 94 L.Ed. 401 (1950). In the case at bar, however, in which the agency's power to investigate is specifically limited by statute, the kind of authority that existed in the cases cited by the Commission is lacking, and thus the policy against interfering with administrative investigations must give way.

The case at bar presents a situation similar to that before the Supreme Court in *Leedom v. Kyne,* 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). In that case the National Labor Relations Board had included professional employees in a bargaining unit with nonprofessionals, despite the fact that the professional employees had a clear statutory right not to be included in such a unit without their consent. Under the National Labor Relations Act, a Board order in certification proceedings is not subject to judicial review. The Court held, however, that the aggrieved employees could maintain a declaratory judgment action and thus bypass the administrative process because this was the only way to prevent "a sacrifice or obliteration of a right which Congress" had given professional employees. *Id.* at 190, 79 S.Ct. at 184. The Court also quoted with approval, *id.* at 189, 79 S.Ct. at 184, the following statement from *Texas & New Orleans R. Co. v. Brotherhood of Railway & S.S. Clerks,* 281 U.S. 548, 569, 50 S.Ct. 427, 74 L.Ed. 1034 (1929):

"The definite prohibition which Congress inserted in the act can not therefore be overriden in the view that Congress intended it to be ignored. As the prohibition was appropriate to the aim of Congress, and is capable of enforcement, the conclusion must be that enforcement was contemplated."

We think this case falls under the principle set forth in *Leedom.* If Morgan's statutory right to be free from FTC investigation is to have any meaning at all, it must be possible to assert it in response to the agency's attempt to enforce its subpoenas.

The judgment of the District Court is reversed and the case is remanded with directions to deny enforcement of the subpoenas.

REVERSED AND REMANDED WITH DIRECTIONS.