## FEDERAL TRADE COMMISSION

v.

**MANUFACTURERS HANOVER CONSUMER SERVICES, INC., Credico Financial, Inc., General Finance Corporation, Domestic Finance Corporation, Barclaysamerican Corporation, Postal Finance Co.**

**MANUFACTURERS HANOVER CONSUMER SERVICES, INC.**

v.

**FEDERAL TRADE COMMISSION, James Miller, Chairman and Paul Rand Dixon, Michael Pertschuk, David A. Clanton, Robert Pitofsky and Patricia P. Bailey, Commissioners.**

**DOMESTIC FINANCE CORPORATION**

v.

**FEDERAL TRADE COMMISSION.**

Misc. No. 81–363, Civ. A. Nos. 81–4418, 82–0656.

United States District Court, E. D. Pennsylvania.

Aug. 3, 1982.

Leslie Rice Melman, Federal Trade Commission, Washington, D. C., for defendant F. T. C.

Cecelia F. Wambold, Duane, Morris & Heckscher, Philadelphia, Pa. and Joseph W. Gelb, Weil, Gotshal & Manges, New York City, for plaintiff Domestic Finance Corp.

Edward F. Mannino, Philadelphia, Pa., for plaintiff Manufacturers Hanover Consumer Service, Inc.

## MEMORANDUM

SHAPIRO, District Judge.

These cases concern a Federal Trade Commission ("FTC") investigation of disclosure policies and procedures of consumer finance companies regarding the sale of credit insurance in connection with consumer loan transactions. The FTC's general investigatory powers, see 15 U.S.C. § 46(a), include the issuance of civil investigative demands ("CID") to compel production of documents, interrogatory answers and testimony for the purpose of ascertaining whether a person is engaged in unfair or deceptive acts or practices. See 15 U.S.C.

§ 57b–1. Forty-three CID's were issued nationwide in this particular investigation. Twenty-two recipients have complied.

Manufacturers Hanover Consumer Services ("Hanover"), Credico Financial, Inc. ("Credico"), General Finance Corporation ("General"), Domestic Finance Corporation ("Domestic"), Barclaysamerican Corporation ("Barclays") and Postal Finance Company ("Postal") are among the twenty-one recipients that have resisted the CID's at the administrative or judicial level. Hanover, Credico, General, Domestic, Barclays and Postal contend that their participation in the sale of credit insurance in connection with consumer loan transactions constitutes "the business of insurance" as that phrase is used in the McCarran-Ferguson Act and Federal Trade Commission Act limitations on FTC jurisdiction.[1]

Three actions are before this court. The FTC has petitioned for enforcement of CIDs issued to these companies. *FTC v. Manufacturers Hanover Consumer Services, Inc.*, Misc. No. 81–363 (E.D.Pa., filed December 4, 1981). We will refer to this petition as the "enforcement action." Hanover and Domestic each have brought actions seeking equitable relief from the FTC investigation. *Manufacturers Hanover Consumer Services, Inc. v. FTC*, No. 81–4418 (E.D.Pa., filed October 28, 1981); *Domestic Finance Corp. v. FTC*, No. 82–656 (E.D.Pa., filed December 7, 1981).[2] These actions will be referred to as the "extra-enforcement actions." The enforcement and extra-enforcement actions were consolidated.[3] In addition, three respondents to the enforcement petition, General, Barclays and Postal sought declaratory and injunctive relief from the FTC's investigation in a separate extra-enforcement suit filed in the Northern District of Illinois. *General Finance Corp. v. FTC*, No. 81–C–6564 (N.D.Ill., filed Nov. 23, 1981).[4] This extra-enforcement ac-

1. The McCarran-Ferguson Act provides that:
   (a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.
   (b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: *Provided, ...* the Federal Trade Commission Act, as amended, shall be applicable to the business of insurance to the extent that such business is not regulated by State law.
   15 U.S.C. § 1012
   The FTC Act, as amended May 28, 1980, provides in relevant part:
   *Additional powers of Commission*
   The Commission shall also have power—
   *Investigation of persons, partnerships, or corporations*
   (a) To gather and compile information concerning, and to investigate from time to time the organization, business, conduct, practices, and management of any person, partnership, or corporation engaged in or whose business affects commerce, excepting banks, savings and loan institutions described in section 57a(f)(3) of this title, and common carriers subject to the Act to regulate commerce, and its relation to other persons, partnerships, and corporations....
   *Investigations of foreign trade conditions; reports*

   (h) ... Nothing in this section (other than the provisions of clause (c) and clause (d)) shall apply to the business of insurance, except that the Commission shall have authority to conduct studies and prepare reports relating to the business of insurance. The Commission may exercise such authority only upon receiving a request which is agreed to by a majority of the members of the Committee on Commerce, Science, and Transportation of the Senate or the Committee on Energy and Commerce of the House of Representatives. The authority to conduct any such study shall expire at the end of the Congress during which the request for such study was made.
   15 U.S.C. § 46.

2. Domestic filed its action in the Southern District of New York. By stipulation and order dated February 4, 1982, the case was transferred to this District.

3. *See* Orders dated January 15, 1982 and February 25, 1982.

4. At least two other extra-enforcement actions concerning this FTC investigation on behalf of persons not parties to these consolidated cases are pending. *Audubon Life Insurance Co. v. FTC*, No. 81–952–B (M.D.La., filed November 20, 1981); *Credithrift Financial, Inc. v. FTC*, No. EV–81–206–C (S.D.Ind., filed October 15, 1981).

tion has since been dismissed. *Id.* (filed June 23, 1982).[5]

The FTC's enforcement petition and respondent Credico's motion for declaratory judgment in the enforcement action are under advisement. This opinion deals not with the merits of that petition but with the anomalous procedural posture of this case in which we find the same parties contesting in extra-enforcement actions, brought here and in the Northern District of Illinois, the same issues as those raised in the enforcement action filed in this District. Before the court in the extra-enforcement actions of Hanover and Domestic are the FTC's motions to dismiss or in the alternative motions for summary judgment, and plaintiffs' cross-motions for summary judgment. For the reasons discussed below, we decline to exercise jurisdiction over the actions brought by Hanover and Domestic and these extra-enforcement actions will be dismissed.

## I. DISCUSSION

A CID is analogous to an investigative subpoena. *See FTC v. International Diamond Corp.*, No. 81–29 (N.D.Cal., filed January 4, 1982). Resort to a court by recipients of investigative subpoenas *before* an action for enforcement has commenced is disfavored. *Reisman v. Caplin*, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964); *Wearly v. FTC*, 616 F.2d 662 (3d Cir.), *cert. denied*, 449 U.S. 822, 101 S.Ct. 81, 66 L.Ed.2d 25 (1980). The teachings of *Wearly* apply to extra-enforcement review rather than merely to pre-enforcement review, for "the significant question is not when the instant action was filed or acted upon vis-a-vis the enforcement proceeding, but whether declaratory relief should be made available outside the channels normally provided for the challenge of agency action." *Exxon Corp. v. FTC*, 588 F.2d 895, 901 (3d Cir. 1978).

The CID statute allows the FTC to petition the district court for the enforcement of a CID. 15 U.S.C. § 57b–1(e). The court has jurisdiction to hear and determine the matter and to enter such orders as may be required. 15 U.S.C. § 57b–1(h). Any final order so entered is subject to appeal. *Id.*; 28 U.S.C. § 1291. Disobedience of any final order "shall" be punished as a contempt of the court. 15 U.S.C. § 57b–1(h). Thus, Congress has provided to Hanover and Domestic a remedy, defense to this enforcement proceeding, and their extra-enforcement actions appear premature. In *General Motors v. Volpe*, 457 F.2d 922 (3d Cir. 1972), in which General Motors sought extra-enforcement judicial review of a National Highway Safety Board order mandating the correction of defects, the Court held that the district court had properly refused to exercise jurisdiction because there was an adequate opportunity to defend the pending enforcement action. So here the FTC's investigation can and is being challenged in the enforcement proceeding pending before this court.

The exception to the rule disfavoring extra-enforcement review is based on two considerations: (1) whether the issue raised was fit for judicial resolution, because no further factual development was necessary or the agency action was final; and (2) whether plaintiffs faced the dilemma of refusing to comply in the face of serious civil or criminal penalties or complying at substantial costs. *Wearly, supra* at 666. Whether or not the issuance of a CID is a "final" agency action, and we doubt it, *see, FTC v. Standard Oil Co.*, 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980), we think it clear that in light of statutory provisions for enforcement hearings, appeals and, if appropriate, stays pending appeal, Hanover and Domestic face neither immediate civil or criminal penalties nor immediate, substantial costs of compliance. They face no dilemma warranting relief prior to enforcement proceedings.

---

**5.** By orders dated January 15, 1982 and April 13, 1982, proceedings against General, Barclays and Postal were temporarily severed and stayed and the parties were given leave to brief the issue of transfer to the Northern District of Illinois. The court was considering in the alternative a severance and stay pending the disposition of the Illinois action. That issue is now moot and the stay will be vacated.

Hanover and Domestic will not be unduly prejudiced if this challenge is confined to the pending enforcement proceeding. *See, General Motors, supra* at 923. The FTC has rightly conceded that we may reach respondent's jurisdictional defense notwithstanding the rule that, to avoid delay in investigations, issues of statutory jurisdiction are ordinarily *not* to be resolved in subpoena enforcement actions. *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946); *ICC v. Gould,* 629 F.2d 847 (3d Cir. 1980), *cert. denied,* 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981). Subpoenas have been enforced so long as the FTC's jurisdiction is "clouded but not plainly spurious." *FTC v. Swanson,* 560 F.2d 1, 2 (1st Cir. 1977); *see also, FTC v. Texaco,* 555 F.2d 862 (D.C.Cir.) (*en banc*), *cert. denied,* 431 U.S. 974, 97 S.Ct. 2939, 53 L.Ed.2d 1072 (1977).

However, the provisions of the McCarran-Ferguson and FTC Acts cited by respondents raise a colorable jurisdictional defense to an FTC *investigation.* In *FTC v. Miller,* 549 F.2d 452 (7th Cir. 1977), the Court held that a jurisdictional defense based on a pre-existing FTC Act investigatory exemption, that for common carriers, could be raised at a subpoena enforcement proceeding. *Accord, FTC v. Winters National Bank & Trust Co.,* 601 F.2d 395, 401–2 n.14 (6th Cir. 1979). *Miller* was cited in the legislative history of the FTC Act Section 46(h) investigatory exemption, pertaining to "the business of insurance," for the following proposition:

> The amendment contemplates that, in determining what lies within the 'business of insurance,' the FTI [sic] will adhere to the judicial precedents. However, the Committee also recognizes that reasonable differences of opinion may exist with regard to whether certain peripheral activities of insurance companies or agents are the 'business of insurance.' The amendment is thus intended to permit judicial review on jurisdictional questions as now permitted under the court decisions construing the existing exemp-

tions from section 6. See e.g., *FTC v. Miller,* 549 F.2d 452 (7th Cir. 1977).

S.Rep.No. 96–500, 96th Cong., 1st Sess. 15 (1970). The *Miller* exception is applicable here.

*Miller* listed three factors compelling deviation from the settled rule: (1) the agency had clearly violated a right secured by statute; (2) the issue was strictly legal, not involving factual determination or agency expertise; and (3) the issue could not be raised upon judicial review of a later agency order. *Miller, supra* at 460.

The last factor is clearly present here. The statutory exemption involves the right to be free from investigation, as opposed to regulation; the respondents cannot be effectively protected by judicial review of a subsequent agency action. The second *Miller* factor is also present, for the determination of whether the respondents' suspect practices constitute the business of insurance requires no further factual determination [6] or FTC expertise. However, in *Miller,* the FTC admitted that respondent was a common carrier within the meaning of the statutory exemption. A statutory right had been clearly violated. Whether respondents fall within the investigatory exemption is at issue here.

Nonetheless, the jurisdictional defense is properly raised in this enforcement action. The FTC's assertion of investigatory authority rests upon an interpretation of the FTC Act which does not depend on any facts sought to be obtained by subpoena. In *FEC v. Machinists Non-Partisan Political League,* 655 F.2d 380 (D.C.Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 397, 70 L.Ed.2d 213 (1981), the Court considered and accepted respondents' jurisdictional defense at the subpoena enforcement stage of an FEC investigation. The underlying issue was whether a "draft-Kennedy" group was subject to the FEC's contribution limits. *Machinists, supra* at 386 n.7. Among the factors cited to support consideration of a jurisdictional defense was that the issue of whether "draft" groups were "political

---

**6.** No party seeks discovery on respondents' jurisdictional status.

committees" under the FEC Act stood or fell on a purely legal claim and that the additional facts sought by FEC subpoena would not alter the FEC's legal assertion. *Id.* at 389–90.[7] The CID's issued by the FTC seek information about corporate structure, policies and procedures, aggregate statistics about consumer loans and the sale of credit insurance, and a sample of loan contracts. Resolution of the respondents' claim to an investigatory exemption does not depend on the information demanded.

As Hanover and Domestic face no immediate penalty—criminal, civil or financial—and as neither will be prejudiced by defending the enforcement action, the FTC's motions for dismissal in the extra-enforcement actions will be granted and Hanover and Domestic's motions for summary judgment will be denied without prejudice to their rights to resist enforcement in the FTC action still pending.

**7.** *Machinists* appears inconsistent with *FTC v. Ernstthal,* 607 F.2d 488 (D.C.Cir.1979), where the court refused to consider the jurisdictional defense at a subpoena enforcement hearing because whether a dental association was a corporation within the meaning of the FTC Act was a "factual question of 'classification'." *Id.* at 491. However, the court relied heavily on the fact that the dental association was not a party to the investigation. *Machinists* and the case before this court are distinguishable on this ground.