616 F.2d 662
 1980-1 Trade Cases 63,175
 WEARLY, W. L., Ingersoll-Rand Company, The Torrington Company
v.
FEDERAL TRADE COMMISSION, Michael Pertschuk, Chairman,
Calvin J. Collier, David A. Clanton, M. Elizabeth
Hanford Dole, Paul Rand Dixon, Members
Wearly, W. L., Ingersoll-Rand Company, The Torrington
Company, Appellants in 78-1115 and 78-1827
Federal Trade Commission, Michael Pertschuk, Chairman,
Calvin J. Collier, David A. Clanton, M. Elizabeth Hanford
Dole, and Paul Rand Dixon, Members, Appellants in 78-1116,
78-1117, 79-1311 and 79-1976.
 Nos. 78-1115 to 78-1117, 78-1827, 79-1311 and 79-1976.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 13, 1979.
Decided Feb. 8, 1980.
As Amended Feb. 13, 1980.
As Amended On Denial of Rehearing and Rehearing In Banc
March 20, 1980.
 
 Joseph W. Burns (argued), Martin J. Neville, Sam Radin, Lovejoy, Wasson, Lundgren & Ashton, New York City, for W. L. Wearly, et al.
 Michael N. Sohn, Gen. Counsel, W. Dennis Cross, Asst. Gen. Counsel, Gerald P. Norton, Deputy Gen. Counsel, Mark W. Haase (argued), Arthur W. Adelberg, Washington, D. C., for the Federal Trade Commission.
 Douglas M. Fryer, Moriarty, Mikkelborg, Broz, Wells & Fryer, Seattle, Wash., for amicus curiae, Wards Cove Packing Company, Inc.
 Roger M. Milgrim, Robert A. Meister, New York City, for amicus curiae, Chemical Specialty Manufacturers Association, American Telephone and Telegraph Company, Burlington Industries, Inc., Chemical Manufacturers Association (formerly Manufacturing Chemist Association), The Dow Chemical Company, Dow Corning Corporation, E. I. DuPont de Nemours & Company, Eli Lilly and Company, General Instrument Corporation, Life Savers, Inc., Monsanto Company, National Association of Manufacturers, PPG Industries, Inc., Rilsan Corporation, Stauffer Chemical Company, Union Carbide Corporation and U.S. Steel Corporation.
 Before HUNTER, WEIS and GARTH, Circuit Judges.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 Reflecting litigants' growing dissatisfaction with the Federal Trade Commission's alleged inadequate protection of trade secrets, plaintiffs sought injunctive relief against enforcement of a Commission subpoena duces tecum. The district court in New Jersey found serious deficiencies in the FTC practices but refused to stay enforcement of the subpoena. The court did order, however, that plaintiffs' documents be placed in custodia legis, permitting the FTC to proceed with its investigation only under protective measures designed to insure the safety of trade secrets. Like the district court, we do not understand the Commission's reluctance to agree to an order that would protect plaintiffs' proprietary interests without restricting the agency's investigation. Nevertheless, we vacate the district court's order and direct that the complaint be dismissed because the matter was not ripe for judicial review.
 
 
 2
 The Commission issued a subpoena duces tecum in 1976 to plaintiff, W. L. Wearly, Chairman of the Board of plaintiff Ingersoll-Rand Company. The subpoena sought documents bearing on the corporate acquisition policy of Ingersoll and was part of a Commission investigation into possible antitrust violations by that company and its subsidiary, plaintiff Torrington Company.
 
 
 3
 Wearly moved before the FTC to quash or limit the subpoena, alleging, among other matters, that some of the documents contained sensitive trade information justifying confidentiality. The Commission refused to quash the subpoena, and after negotiations failed to resolve the issue satisfactorily, plaintiffs sought declaratory and injunctive relief in the United States District Court for the District of New Jersey. The complaint, filed in September 1977, sought a declaration that the FTC did not have the ability to protect the confidentiality of trade secrets properly; documents passed onto Congress might be revealed to competitors; the subpoena was overly broad; and it encroached upon fourth and fifth amendment rights. Plaintiffs also asked that the enforcement of the subpoena be enjoined.
 
 
 4
 The district court denied the request for a preliminary injunction but issued a stay of enforcement pending appeal. Soon thereafter, the court refused defendants' motion to dismiss. After this court on the FTC's application lifted the stay of enforcement, the Commission precipitously moved to enforce its subpoena in the District Court for the District of Columbia rather than awaiting the outcome on appeal. While the agency's petition was pending in the District of Columbia, the New Jersey district court denied plaintiffs' renewed motion for a preliminary injunction. In response to the Commission's request for discovery, the court ordered that the disputed documents be placed in custodia legis.
 
 
 5
 On April 27, 1978, the District of Columbia district court issued an order enforcing the subpoena. Four days later, partially in response to that action, the New Jersey district court handed down a more detailed protective order. Under its terms, the FTC was permitted to inspect the documents only at the plaintiffs' offices. The hearings continued in New Jersey but the Commission, in a most curious stance for a governmental agency, refused to participate, relying instead on a res judicata defense grounded on the enforcement order it had obtained in the District of Columbia. That order was eventually vacated by the Court of Appeals for the District of Columbia Circuit.[1]
 
 
 6
 The New Jersey district court ultimately agreed with plaintiffs that their proprietary rights in trade secrets and other confidential information would be jeopardized by surrendering the documents to the Commission. The court ordered that the documents remain in custodia legis, available for inspection by the FTC under conditions tailored to preserve confidentiality. The last activity in the district court occurred in July of 1979 when the defendants' posttrial motions were denied.[2] All appeals were subsequently consolidated in this court.[3]
 
 
 7
 This statement of facts is severely compressed, but in view of our disposition, we find it unnecessary to review the considerable and to a large extent unnecessary prolongation of this controversy. The trial court found that the plaintiffs' fear that their confidential business secrets will be made available to competitors, both domestic and foreign, is real. The concern of the district judge that the constitutional rights of the plaintiffs would be violated by the FTC through the destruction by disclosure of valuable trade secrets is understandable. In response, the FTC contends that, as a matter of policy, it does screen documents, and as to those it considers confidential agrees to give ten-days notice to the owners before disclosing pursuant to Freedom of Information Act requests. If, however, a request comes from a congressional committee, the agency concedes it does not assure compliance with the ten-day practice. See FTC v. Anderson, --- U.S.App.D.C. ---, ---, --- F.2d ----, ---- (D.C.Cir.1979). See generally Johnson, Treatment of Confidential Documents by the Federal Trade Commission, 46 Antitrust L.J. 1017 (1978).[4]
 
 
 8
 Evidence introduced in the district court demonstrated that in the past the Commission has made inappropriate disclosures, and the trial judge noted a number of instances where "informal arrangements for confidential treatment of proprietary information were not strictly honored." Wearly v. FTC, 462 F.Supp. 589, 607 (D.N.J. 1978). He described the disclosures in one case as "an evasion, and a violation of the spirit of (an) order." Id. Although legitimate investigation should not be unduly delayed, we agree with the district judge that the unfortunate disclosures by the FTC of confidential information are the kind of governmental behavior that simply cannot be countenanced.[5]
 
 
 9
 Nevertheless, while we acknowledge the serious and well-founded concerns that impressed the district court, the initial inquiry must be whether there was jurisdiction to entertain this suit. We start with the basic premise that a subpoena from the FTC is not self-enforcing. The agency must go to the district court and petition for an order directing compliance with the subpoena. In acting on that petition the district court's role is not that of a mere rubber stamp, but of an independent reviewing authority called upon to insure the integrity of the proceeding. "The system of judicial enforcement is designed to provide a meaningful day in court for one resisting an administrative subpoena." United States v. Security State Bank and Trust, 473 F.2d 638, 642 (5th Cir. 1973). In the discharge of that duty, the court has the power to condition enforcement upon observance of safeguards to the respondent's valid interests.[6]
 
 
 10
 Characterizing its jurisdiction as "plenary," 462 F.Supp. at 604, the district court took strong measures to insure that confidential information would not be "leaked." Although there is evidentiary support for that action, the court erred in not according adequate significance to the possibility that its order might be premature because judicial intervention had been sought at such an early stage of the agency proceedings.
 
 
 11
 Resort to a court by recipients of investigative subpoenas before an action for enforcement has commenced is generally disfavored. In Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964), the Supreme Court held that a preenforcement order enjoining the use of an Internal Revenue subpoena could not be granted because the respondents had an adequate remedy at law: the enforcement hearing was an adversary proceeding affording a judicial forum for challenges to the summons and giving complete protection to the witness. Id. at 446, 84 S.Ct. at 512. Years before Reisman was decided, the Court, in FTC v. Claire Furnace Co., 274 U.S. 160, 174, 47 S.Ct. 553, 556, 71 L.Ed. 978 (1927), discussed in St. Regis Paper Co. v. United States, 368 U.S. 208, 225-26, 82 S.Ct. 289, 299, 7 L.Ed.2d 240 (1961), declined to entertain a suit in equity challenging the scope of an FTC subpoena at the preenforcement stage. Several courts of appeals have followed the Claire Furnace/Reisman principle in dismissing similar suits brought against the Commission. E. g., American Motors Corp. v. FTC, 601 F.2d 1329, 1335-37 (6th Cir.), cert. denied, --- U.S. ----, 100 S.Ct. 294, 62 L.Ed.2d 307 (1979); Atlantic Richfield Co. v. FTC, 546 F.2d 646, 648-49 (5th Cir. 1977); Anheuser-Busch, Inc. v. FTC, 359 F.2d 487, 489-91 (8th Cir. 1966).
 
 
 12
 In some circumstances, however, preenforcement review is necessary. In the trilogy of Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); Toilet Goods Association, Inc. v. Gardner, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967); and Gardner v. Toilet Goods Association, Inc., 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967), the Court indicated that a district court has jurisdiction to entertain a preenforcement challenge to agency action, but may properly do so only under certain specified circumstances defined in the three cases. In Abbott, the Food and Drug Administration issued regulations governing the labeling of prescription drugs. Compliance by the drug companies would have required them to change all of the labels and promotional material, destroy existing stocks of printed matter, and make substantial investments in new supplies. Failure to comply would have exposed them to serious criminal and civil penalties.
 
 
 13
 The first inquiry undertaken by the Abbott Court was whether anything in the statute authorizing agency action prohibited preenforcement review. Finding none, the opinion then moved to the critical issue whether the controversy was ripe for judicial determination. Two factors were addressed: the fitness of the issues for judicial resolution and the potential hardship to the parties in the event the court were to withhold review. As to the former, the Court determined that whether the FDA properly promulgated the regulation was a controversy essentially legal in nature, one which did not require further factual development. Moreover, the agency action was final in the sense that no further action was contemplated. With respect to the hardship factor, the plaintiffs were faced, on the one hand, with substantial costs of compliance and, on the other, with the possibility of criminal prosecution in the event of noncompliance. Given these circumstances, the Abbott Court held that
 
 
 14
 "(w)here the legal issue presented is fit for judicial resolution, and where a regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance, access to the courts . . . must be permitted, absent a statutory bar or some other unusual circumstance, neither of which appears here."
 
 387 U.S. at 153, 87 S.Ct. at 1518.[7]
 
 15
 We have applied the Abbott ripeness criteria in two cases where the FTC was a party, A. O. Smith Corp. v. FTC, 530 F.2d 515 (3d Cir. 1976), and Exxon Corp. v. FTC, 588 F.2d 895 (3d Cir. 1978). After an exhaustive review of the authorities, the A. O. Smith opinion concluded that an FTC resolution requiring submission of line of business forms containing extensive accounting data was reviewable before enforcement was undertaken by the agency. In reaching this result, we first observed that the FTC Act did not proscribe preenforcement suits. 530 F.2d at 520. Then, looking to Abbott, both the fitness for review and hardship phases of the ripeness test were found to have been met. The FTC action was final and no factual development was necessary; considerable expense would have been required in obeying the regulation; and the agency had advised plaintiffs that penalties would be imposed for a failure to file.
 
 
 16
 A. O. Smith embodies an important policy decision by this court but differs in critical respects from the case sub judice. Most importantly, the court there was not concerned with an agency investigative subpoena, which in the normal course may be reviewed in an enforcement proceeding, but an order designed to expand existing corporate financial reporting and self-enforcing to the extent that penalties accrued after notice from the Commission. The second case, however, Exxon Corp. v. FTC, supra, is quite similar to the one under review.
 
 
 17
 The Exxon court was asked to rule on the protection to be given confidential documents after they had been delivered to the agency. After the Commission issued a protective order, Exxon and Gulf surrendered exceptionally voluminous documents, many of which were confidential. Those two companies and others then sued the FTC in the district court in Delaware, seeking a declaratory judgment that the agency was not providing, and could not provide, adequate protection for the confidential material, and by way of further relief, asked the court to rule that the documents were not obtainable under the Freedom of Information Act. Five months later, while the Delaware suit was still pending, the Commission brought an enforcement suit in the District of Columbia against the other oil companies. That district court granted enforcement without modifying the Commission protective order, rejecting contentions similar to those urged by Exxon and Gulf in the Delaware district court.
 
 
 18
 We concluded that the Abbott test of ripeness should be applied even though Gulf and Exxon were not requesting preenforcement but rather "extra enforcement" review. Since the documents were already in the FTC's possession and because of the extraordinary volume of the documents subpoenaed, we held that the hardship factor was satisfied. The previous FTC review of the protective order constituted the final agency action prerequisite of fitness for judicial decision. But the question whether the issues before the district court were legal or factual required a differentiation between plaintiffs' claims. The one addressing possible future FOIA requests required factual development and, accordingly, we held the district court was correct in refusing to exercise jurisdiction over that claim. As to the contention that the Commission lacked ability to insure the confidentiality of documents, however, the issues were purely legal, and therefore the district court had erred in refusing to exercise jurisdiction over that claim.
 
 
 19
 In both Exxon and the case at bar, the plaintiffs sought, outside of the enforcement action, to contest the FTC's disclosure policies. To that extent the two cases parallel each other. This case diverges at crucial points, however, from Exxon, as well as A. O. Smith, and compels a different conclusion that this case is not ripe for judicial review.
 
 
 20
 In both Exxon and A. O. Smith, there were final agency rulings that affected the plaintiffs. In Exxon, for example, the plaintiffs elected to treat a Commission ruling on confidentiality as final and delivered the documents to the agency. That is not true, however, with respect to the case at bar. Here the documents have remained in the custody of the court, and although the FTC has been free to examine the papers, the court has retained control.[8] Thus, the agency has yet to take a position on which documents should be subject to what type of confidential treatment.
 
 
 21
 Besides failing to satisfy the Abbott requirement of finality, plaintiffs did not establish whether the decision to comply with the subpoena placed them on the horns of a dilemma. Wearly was under no compulsion to either turn over the documents to the FTC or suffer civil or criminal penalties as a result. He was free to await enforcement proceedings, and at that time, or thereafter, could have raised his objections to the inadequacy of the FTC confidentiality procedures.[9] Nor does there appear to be any merit to Wearly's assertion that his refusal to comply with the subpoena could have exposed him to a criminal contempt citation under § 10 of the FTC Act, 15 U.S.C. § 50. As with the statute at issue in Reisman v. Caplin, supra at 447, 84 S.Ct. at 512, "(contempt) does not apply where the witness appears and interposes good faith challenges to the summons." See American Motors Corp. v. FTC, supra at 1338; First National City Bank v. FTC, 538 F.2d 937, 938 (2d Cir. 1976); Anheuser-Busch, Inc. v. FTC, supra at 490. Here, of course, there is nothing in the record to suggest that Wearly's noncompliance has been contumacious.
 
 
 22
 Our conclusion that the district court did not have preenforcement jurisdiction in this case does not in any way signify a weakening of the policy established in A. O. Smith and Exxon but is, in fact, in accord with it. The dispute here is simply one that is on the Reisman side of the Reisman/Abbott fence. See, e.g., American Motors Corp. v. FTC, supra; Atlantic Richfield Co. v. FTC, supra; cf. Dresser Industries, Inc. v. United States, 596 F.2d 1231 (5th Cir. 1979) (SEC subpoena).
 
 
 23
 Accordingly, the judgment of the district court will be vacated, and the court will be directed to dismiss the complaint. Each party to bear its own costs.
 
 
 
 [1]
 In an unpublished decision, FTC v. Wearly, 194 U.S.App.D.C. 391, 598 F.2d 310 (D.C.Cir.1979), the court of appeals observed that the forum shopping by both litigants had precipitated a "regrettable" conflict in court orders that should not continue. It commented that the FTC could have sought, via counterclaim, the enforcement of its subpoena in New Jersey, which was "not an inconvenient location for this litigation."
 The deliberate creation of conflict between courts of concurrent jurisdiction is unseemly and should not be undertaken by the Commission.
 
 
 [2]
 The principal opinion of the district court is reported at 462 F.Supp. 589 (D.N.J. 1978). The orders disposing of the posttrial motions were accompanied by unreported opinions
 
 
 [3]
 Six appeals have been consolidated: No. 78-1115, plaintiffs' appeal from the initial denial of their request for a preliminary injunction; No. 78-1116, defendants' appeal from the refusal to remove the stay of enforcement pending appeal; No. 78-1117, defendants' appeal from the denial of their motion to dismiss; No. 78-1827, plaintiffs' appeal from the denial of their renewed request for a preliminary injunction; No. 79-1311, defendants' appeal from the denial of their motion to reconsider the judgment; No. 79-1976, defendants' appeal from the denial of their final posttrial motions
 Counsel agreed at oral argument that all issues surviving from the earlier appeals are embraced within the appeal at No. 79-1976. Our examination of the record leads us to the same conclusion. Thus our consideration of No. 79-1976 disposes of all issues before us.
 
 
 [4]
 We note in passing that at least one court has suggested that congressional action violative of a constitutional right such as the public disclosure of a trade secret rising to the level of a property interest could be redressed by judicial action. See Exxon Corp. v. FTC, 191 U.S.App.D.C. 59, 67, 589 F.2d 582, 590 (D.C.Cir.1978), cert. denied, 441 U.S. 943, 99 S.Ct. 2160, 60 L.Ed.2d 1044 (1979)
 
 
 [5]
 As another example of questionable agency practice, during oral argument, counsel for the plaintiffs described an incident in which the FTC staff telephoned Wearly directly, ordering him to be "in court" before the Commission on a certain day. The call occurred while Wearly's attorney was available and, indeed, was in another part of the Commission's office. We accept the FTC's statement at oral argument that such bypassing of counsel was not the policy of the Commission and will not be repeated
 
 
 [6]
 In FTC v. Johns-Manville Corp., 5 Trade Reg. Rep. (CCH) P 62,830 (D.Colo. Aug. 28, 1979), the district court viewed the ten-day notice procedure of the FTC as "not going far enough to protect the interests involved" and ordered the parties to prepare a more comprehensive protective order as a condition of enforcement. Id. at p. 78,794. The court reasoned that the standard of review prescribed in FCC v. Schreiber, 381 U.S. 279, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1965), was not controlling because in that case the agency had acted pursuant to a validly promulgated regulation. The FTC, on the other hand, has not adopted a regulation on confidentiality and acts solely on the basis of agency "practice." FTC v. Johns-Manville Corp., supra at p. 78,793; see FTC v. Cockrell, 431 F.Supp. 561 (D.D.C. 1977), where the court required a ten-day notice so that the plaintiffs would have an opportunity to protect their interests through subsequent judicial review. Cf. United States v. GAF Corp., 596 F.2d 10, 14-15 (2d Cir. 1979) (enforcement of Justice Department Civil Investigative Demand may be conditioned upon protective order)
 Apparently, the customary procedure is for the court not to rule on any documents until the Commission has reviewed them and decided whether it will afford confidential status to them. Some care should be taken, however, to prevent unwarranted disclosure during the periods after the information is handed over to the Commission but before it has made its judgment on confidentiality and before the court has had an opportunity to review that determination.
 
 
 [7]
 In the companion case of Toilet Goods Association, Inc. v. Gardner, supra, application of the Abbott analysis yielded the opposite result a controversy not ripe for judicial decision
 
 
 [8]
 Although the FTC has been offered the opportunity to review all of the documents in custodia legis, it has consistently refused to do so, even though the district court has shown a willingness to consider that the material be taken to Washington D.C. The agency, therefore, must bear its full share of responsibility for any delay in the investigation that has occurred to this point. Clearly, the plaintiffs, though diligent in asserting the alleged deprivation of their proprietary rights, have not prevented the agency from conducting its investigation
 
 
 [9]
 To the extent that Wearly may fear disclosure by the FTC of those documents heretofore made available to it under the terms of the district court's custodial order, Wearly may desire to seek protective conditions to be attached to the district court's order of dismissal. Obviously, any such conditions, if imposed, could only be effective until such time as the FTC secures an enforcement order against Wearly. In such a proceeding, Wearly may raise all the objections to the subpoena that he has presented to us here. See note 6 supra