UNITED STATES of America, Plaintiff,

v.

SHARON STEEL CORPORATION,
Defendant.

Civ. A. No. 79–1201.

United States District Court,
D. Pennsylvania.

June 5, 1980.

Craig R. McKay, Pittsburgh, Pa., James W. Moorman, Asst. Atty. Gen., Land & Natural Resources, U. S. Environmental Protection Agency, Washington, D. C., for plaintiff.

Blair S. McMillin, Pittsburgh, Pa., for defendant.

## OPINION

ZIEGLER, District Judge.

### I. *History of Case*

This is a civil action for penalties and injunctive relief predicated on section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(b) (1970). The United States of America, by the Environmental Protection Agency (EPA), alleges that defendant's steelmaking plant at Farrell, Pennsylvania, violates the clean air standards delineated in the Act. Sharon Steel Corporation filed an answer and counterclaim in which it requests this court to enjoin and declare unlawful the administrative "listing proceedings" initiated by EPA following the filing of the complaint. Presently before the court is the motion of plaintiff to dismiss Sharon's counterclaim. Because Sharon's claim is not ripe for judicial resolution, the motion to dismiss the counterclaim must be granted without prejudice to defendant.

### II. *The Listing Proceeding*

The EPA has promulgated regulations aimed at insuring that governmental contracts, grants and loans are not awarded to applicants "whose facilities are found to be in noncompliance with clean air and water standards." 40 C.F.R. § 1520(a), as amended 44 Fed.Reg. 6911, (2–5–79). The Assistant Administrator is charged with maintaining a list of violating facilities. *Id.* Once a facility is listed, "[n]o agency shall enter into, renew, or extend any nonexempt contract, subcontract, grant, subgrant, loan, or subloan where a facility listed would be utilized . . . ." *Id.* at § 15.20(b). The regulations specify numerous grounds for consideration of a facility for listing.[1]

---

1. (1) Basis for consideration of listing. Federal, State, or local criminal convictions, civil adjudications, or administrative findings of noncompliance may serve as the basis for con-

Recommendations for placement of a facility on a list may come from the Regional Administrator, the Deputy Assistant Administrator for Water Enforcement, Governors or the public. *See* Appendix A to 40 C.F.R. § 15.20, *et seq.* at 44 Fed.Reg. 6911 (2–2–79). Once such a recommendation is made, a listing official is assigned to review the matter. The case is then placed on the listing docket, and a case examiner is assigned to consider the allegations. *Id.* The owner of the facility is notified of the recommendation and is "afforded an opportunity to confer with the Assistant Administrator and present orally or in writing, and with assistance of counsel, data or information relating to the proposed placement of the facility on the list." 40 C.F.R. § 15.-20(a)(2). If the examiner determines that adequate evidence of noncompliance is extant, a "recommended decision" is issued to a listing review panel. Appendix A, *supra.* The panel then has 30 days within which to review the recommendation and issue a "final decision." *Id.*

Upon completion of the above requirements, a facility may be listed. 40 C.F.R. § 15.20(a)(3). The list is distributed periodically to all federal agencies and published in the Federal Register.

The regulations provide several ways for delisting. 40 C.F.R. § 15.20(c). They include: (1) the reversal or modification of a conviction, order, judgment, or decree which constitutes the basis for the listing; (2) a written request to the assistant administrator containing appropriate evidence "that the condition which gave rise to the listing has been corrected;" and (3) for facilities listed under § 15.20(a)(1)(i)(ii)(iii), (v), and (vi), the owner of the facility may file a written request "based upon an approved plan of compliance which will ensure the condition which gave rise to the listing [is] corrected." *Id.*

If the request for delisting is denied, the owner of the facility may seek a *de novo* hearing. 40 C.F.R. § 15.20(c) and § 15.-21(a).[2]

Pursuant to these regulations, the EPA notified Sharon on September 4, 1979, that placement of the Farrell facility on the list

sideration of listing facilities. However, the listing of a facility based on a State or local civil adjudication or administrative finding shall not be considered unless the Governor of the State has referred the applicant, contractor, grantee, or borrower whose facility has given rise to such adjudication or finding to the Assistant Administrator in accordance with § 15.-23. The following Federal, State, and local determinations may serve as bases for listing:

(i) Facilities which have given rise to a conviction under section 113(c)(1) of the Air Act.

(ii) Facilities which have given rise to any injunction, order, judgment, decree, or other form of civil ruling by a Federal, State, or local court issued as a result of noncompliance with clean air standards, or facilities which have given rise to a conviction in a State or local court for noncompliance with clean air standards.

(iii) Facilities not in compliance with an order under section 113(a) of the Air Act, or which have given rise to the initiation of court action under section 113(b) of the Air Act, or have been subjected to equivalent State or local proceedings to enforce clean air standards.

(iv) Facilities which have given rise to a conviction under section 309(c) of the Water Act.

(v) Facilities which have given rise to any injunction, order, judgment, decree, or other form of civil ruling by a Federal, State, or local court issued as a result of noncompliance with clean water standards, or facilities which have given rise to a conviction in a State or local court for noncompliance with clean water standards.

(vi) Facilities not in compliance with an order under section 309(a) of the Water Act, or which have given rise to the initiation of court action under section 309(b) of the Water Act, or have been subjected to equivalent State or local proceedings to enforce clean water standards.

40 C.F.R. § 15.20(a)(1)(i–vi).

2. In its brief, the EPA contends that the delisting procedures afford an owner with an opportunity to argue non-violation of the Act. *See* reply brief of the EPA at 6. Sharon contends that, once the Farrell facility is listed, delisting can occur only if it corrects the conditions that are found to be wanting. Sharon argues, therefore, that the delisting procedures do not provide administrative review from the decision of the listing panel. In light of our holding, i. e., the matter is not ripe for judicial resolution, we express no opinion concerning the correct construction of these regulations.

of violating facilities was being considered.[3] The predicate for initiation of listing proceedings is 40 C.F.R. § 15.20(a)(1)(iii) which provides:

(iii) Facilities not in compliance with an order under section 113(a) of the Air Act, or which have given rise to the initiation of court action under section 113(b) of the Air Act, or have been subjected to equivalent State or local proceedings to enforce clean air standards.

Upon receipt of this notification, Sharon filed a motion with this court to postpone the scheduled listing proceeding. The motion was denied on October 1, 1979, and a listing proceeding was held before a case examiner on October 3, 1979. No decision has been rendered.

In its counterclaim for injunctive relief, Sharon advances three arguments: (1) Section 306(a) of the Clean Air Act, 42 U.S.C. § 7606 (1970), does not authorize the EPA to promulgate regulations which permit the administrator to conduct listing proceedings following the initiation of a civil action against an owner of a facility; (2) the listing proceeding violates due process and the Administrative Procedure Act; and (3) the listing proceeding exceeded the scope of the regulations by considering alleged violations by Sharon which are not asserted in the complaint.

We hold that the counterclaim of Sharon Steel Corporation must be dismissed because the controversy is not ripe for jurisprudential resolution. We express no opinion on the merits of defendant's contentions, nor do we express any opinion as to whether Sharon must exhaust its administrative remedies if the EPA determines to list the Farrell facility.

### III. *Discussion*

The guiding principles for determining whether administrative-agency action is ripe for judicial resolution derive from the *Abbott Laboratories* trilogy.[4] In *A. O.*

*Smith Corp. v. F.T.C.*, 530 F.2d 515 (3d Cir. 1976) and *Wearly v. F.T.C.*, 616 F.2d 662 (3d Cir. 1980), Judges Aldisert and Weis, respectively, of the Court of Appeals for the Third Circuit, lucidly reviewed the teachings of the *Abbott* Court.

In *A. O. Smith*, the court granted pre-enforcement review of regulations promulgated by the Federal Trade Commission which required 345 corporations to complete and file line of business reports. 530 F.2d at 518. The failure to file such reports resulted in civil fines. *Id.* at 519. Judge Aldisert summarized the *Abbott Laboratories* test as follows:

Thus, it appears from the *Abbott Laboratories* trilogy that one seeking discretionary relief may not obtain pre-enforcement judicial review of agency action if there is no immediate threat of sanctions for noncompliance, or if the potential sanction is de minimis. Conversely, the court should find agency action ripe for judicial review if the action is final and clear-cut, and if it puts the complaining party on the horns of a dilemma: if he complies and awaits ultimate judicial determination of the action's validity, change his course of day-to-day conduct, for example, by undertaking substantial preliminary paper work scientific testing and recordkeeping, or by destroying stock; alternatively, if he does not comply, he risks sanctions or injuries including, for example, civil and criminal penalties, or loss of public confidence.

530 F.2d at 524.

In holding that the F.T.C.'s actions were ripe for judicial resolution, the Court of Appeals reasoned that the action was final and the petitioners were faced with the choice of compliance or civil penalties. *Id.* at 524.

In *Wearly v. F.T.C.*, the plaintiffs were denied pre-enforcement review of an agen-

---

**3.** *See* Exhibit I to Sharon's motion for order directing the EPA to postpone scheduled listing proceedings.

**4.** *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Toilet Goods Association v. Gardner*, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967); *Gardner v. Toilet Goods Association*, 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967).

cy subpoena. The court reviewed *Abbott Laboratories* in detail:

In some circumstances, however, pre-enforcement review is necessary. In the trilogy of *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Toilet Goods Association, Inc. v. Gardner*, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967); and *Gardner v. Toilet Goods Association, Inc.*, 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967), the Court indicated that a district court has jurisdiction to entertain a pre-enforcement challenge to agency action, but may properly do so only under certain specified circumstances defined in the three cases. In *Abbott*, the Food and Drug Administration issued regulations governing the labeling of prescription drugs. Compliance by the drug companies would have required them to change all of the labels and promotional material, destroy existing stocks of printed matter, and make substantial investments in new supplies. Failure to comply would have exposed them to serious criminal and civil penalties.

The first inquiry undertaken by the *Abbott* Court was whether anything in the statute authorizing agency action prohibited pre-enforcement review. Finding none, the opinion then moved to the critical issue—whether the controversy was ripe for judicial determination. Two factors were addressed: the fitness of the issues for judicial resolution and the potential hardship to the parties in the event the court were to withhold review. As to the former, the Court determined whether the FDA properly promulgated the regulation was a controversy essentially legal in nature, one which did not require further factual development. Moreover, the agency action was final in the sense that no further action was contemplated. With respect to the hardship factor, the plaintiffs were faced, on the one hand, with substantial costs of compliance and, on the other, with the possibility of criminal prosecution in the event of noncompliance.

Given these circumstances, the *Abbott* Court held that

[w]here the legal issue presented is fit for judicial resolution, and where a regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance, access to the courts . . . must be permitted, absent a statutory bar or some other unusual circumstance, neither of which appears here.

387 U.S. at 153, 87 S.Ct. 1507.

*Wearly v. F.T.C., supra* at 666.

In the instant case, the EPA has promulgated regulations governing the procedure by which a facility is listed. The regulations themselves present no "immediate threat of sanctions" nor do they require Sharon to "change [their] . . . day-to-day conduct." *A. O. Smith v. F.T.C., supra* at 524. Unlike the corporate entities in *A. O. Smith*, Sharon is not placed "on the horns of a dilemma," between compliance or civil penalties. No substantial hardship will accrue to Sharon by this court's decision to withhold review.

Finally, unlike *A. O. Smith* and *Abbott Laboratories*, the agency's actions are not final since a listing decision has not been rendered. It is possible that the EPA may never list the Farrell facility and therefore, in our judgment, review of the listing regulations at this juncture is inappropriate. The counterclaim of Sharon Steel Corporation must be dismissed without prejudice.

IT IS SO ORDERED.