UNITED STATES of America, Petitioner,

v.

Hugh A. McGOVERN, Brian A. Mehler, Lynn O. Wright, Joseph J. Chwastyk, William Zewe, Respondents.

Civ. A. No. 80–0560.

United States District Court, M. D. Pennsylvania.

July 2, 1980.

See also, D.C., 87 F.R.D. 582; D.C., 87 F.R.D. 590.

J. Andrew Smyser, Asst. U. S. Atty., Harrisburg, Pa., Robert J. Franzinger, Robert D. Neslew, Dept. of Justice, Federal Programs Branch, Civil Division, Washington, D. C., for petitioner.

Smith Barton Gephart, Harrisburg, Pa., Harry H. Voigt, Eugene R. Fidell, LeBoeuf, Lamb, Leiby & MacRae, Washington, D. C., for respondents.

## MEMORANDUM

RAMBO, District Judge.

On or about May 2, 1980, subpoenas were issued to the above named respondents by Mr. Victor Stello, acting on behalf of the Nuclear Regulatory Commission (NRC), pursuant to the subpoena power afforded the NRC under 42 U.S.C. § 2201(c). The subpoenas required respondents to appear and testify on May 20, 1980. Counsel for respondents filed a motion to quash the subpoenas on May 15, 1980, alleging that the subpoenas were unduly burdensome and that a grand jury investigating incidents at Three Mile Island (TMI) pre-empted further NRC investigations.

To make the time less burdensome on the respondents, the return date of the subpoenas was postponed until May 29 and 30, 1980. On May 27, 1980, respondents filed a supplement to their motion to quash, which apparently was not persuasive, as the NRC denied respondents' motion to quash the subpoenas on May 28, 1980. Respondents failed to appear on May 29 and 30, 1980, and on June 2, 1980, petitioner filed a petition seeking an order requiring respondents to appear pursuant to the subpoenas. On June 3, 1980 this court issued an Order to Show Cause, requiring respondents or their respective counsel to be present on June 18, 1980 to show cause why they should not be required to comply with the NRC subpoenas.

Respondents at this juncture, filed a notice of discovery on plaintiffs, seeking to depose Victor Stello, John F. Ahearne, and Robert K. Martin. Plaintiff responded with a motion for a protective order, which was granted on June 18, 1980. On June 20, 1980, an evidentiary hearing, rather than a summary hearing, was held with respect to petitioner's motion seeking enforcement of the subject subpoenas. This memorandum addresses the motion for enforcement of the NRC subpoenas.

Petitioner avers that respondents were properly subpoenaed pursuant to 42 U.S.C. § 2201(c) for a legitimate purpose and that enforcement of the subpoenas should be granted pursuant to 42 U.S.C. § 2281. In support of its petition, petitioner submitted an affidavit of Victor Stello wherein he sets forth the need for continued NRC investigations in the three specific areas (hereinafter referred to as information transfer) addressed in the subpoenas, namely:

1. the calculated dose rate of 10 R/hr in Goldsboro;

2. the elevated in-core thermocouple indications; and

3. the pressure spike in the containment vessel.

Respondents, on the other hand, contend that the government does not allege in the petition that the subpoenas were issued in good faith nor that the information sought is not already in the possession of the government. Respondents contend, therefore, that the petition should be dismissed, citing, inter alia, United States v. McCarthy, 514 F.2d 368 (3rd Cir. 1975). Respondents, after attacking the sufficiency of the petition itself, allege the following:

1. That the government's purposes in issuing the subpoenas are improper;

2. That compliance should not be required because the NRC's investigation is "inextricably intertwined" with that of the currently convened grand jury; and

3. That compliance should not be required because the subpoenas were issued in aid of a criminal investigation.

4. That because the government possesses the information sought, compliance with the subpoenas should not be required;

As a result, respondents request the petition for compliance be denied.

In support of their contention that the pleadings themselves are defective and therefore the petition should be dismissed, respondents cite, inter alia, United States v. McCarthy, 514 F.2d 368 (3rd Cir. 1975). In McCarthy, the court explicitly addressed the issue of pleadings in this type of proceeding, stating:

As we have already stated, we read Powell to require that the plaintiffs plead, in order to establish a prima facie case for the enforceability of a summons: (1) that the investigation has a legitimate purpose and that the inquiry may be relevant to that purpose; (2) that the information sought is not already within the government's possession, and (3) that the government has followed the procedural steps required by the Internal Revenue Code. Id. at 373.

Respondents assert that, since the pleadings in the case sub judice do not allege that the subpoenas were issued in good faith and that the government is not presently in control of the information sought under the subpoenas, the petition is defective and should be dismissed.

The court in McCarthy, goes on to point out, however, that an evidentiary hearing may be held if the party subpoenaed successfully puts in issue an allegation in the complaint or raises a proper defense. Enforcement of the subpoena, at the hearing, would be contingent upon the evidence brought to light at the hearing. Implicit in this reasoning is that if there is a defect in the pleadings, it will not preclude enforcement of the subpoenas if the elements required in the pleadings pursuant to McCarthy are properly shown at the evidentiary hearing. Since the requirements of a pleading as enumerated in McCarthy are the same as those required for the enforcement of the subpoenas (as discussed infra), if enforcement is proper, the defective pleading is of no moment. No opinion is expressed for the situation in which the pleading is defective and no evidentiary hearing is held. Accordingly, we turn to the evidence presented by petitioner at the evidentiary hearing to determine if petitioner has successfully withstood the opposing allegations and affirmative defenses raised by respondents, making enforcement proper.

It should be noted initially, that the majority of the cases cited by plaintiff and all of the cases cited by respondents refer to proceedings involving the enforcement of Internal Revenue Service summons. This observation is made because the Internal Revenue Service is "inextricably intertwined" with the Justice Department, more so perhaps than any other administrative agency. Although these cases cited by petitioner and respondents may be distinguishable on that basis, they are nonetheless persuasive in the instant case particularly in light of the fact that they, too, involved situations where criminal sanctions and prosecutions were available or imminent. On this reasoning, the court feels it appropriate to apply the requirements propounded in the Internal Revenue Service summons enforcement cases to the case presently before it.

The United States Supreme Court in *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), established that the

> Commissioner need not meet any standard of probable cause to obtain enforcement of his summons . . . He must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the [relevant statute] have been followed. *Id.* at 57–58, 85 S.Ct. at 255.

These requirements have been uniformly applied by the Third Circuit Court of Appeals. *U. S. v. McCarthy*, 514 F.2d 368 (3rd Cir. 1975). *U. S. v. Garden State Bank*, 607 F.2d 62 (3rd Cir. 1979); *N. L. R. B. v. Interstate Dress Carriers, Inc.*, 610 F.2d 99 (3rd Cir. 1979) (a non-IRS case which did not involve criminal sanctions); *W. L. Wearly v. F. T. C.*, 616 F.2d 662 (3rd Cir. 1980).

■ Respondents contend that the NRC's purpose in issuing the subpoenas is improper, alleging that the NRC is merely acting as a "funnel" to develop information for the grand jury presently convened. Such activity has been specifically condemned by the Supreme Court in *United States v. LaSalle National Bank*, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978) and *Donaldson v. United States*, 400 U.S. 517, 91 S.C.t 534, 27 L.Ed.2d 580 (1971). In *N. L. R. B. v. Interstate Dress Carriers, Inc., supra*, however, the court held that "the mere fact that a criminal investigation is underway simultaneous to the agency's subpoena motion does not, *without more*, demonstrate that the subpoena was intended to serve [an] impermissible purpose". *Id.* at 112. (emphasis added).

Not only have respondents failed to show more than simultaneous activity by the NRC and the Justice Department, but the petitioner, at the evidentiary hearing, elicited testimony to the effect that all precautions were being taken to assure no "funneling" of information to the grand jury is taking *place*.[1] The court finds, therefore, that the subpoenas were issued for a proper purpose and not to "funnel" information to the grand jury.

Respondents next contend that the NRC cannot be issuing the subpoenas in good faith since the NRC has referred the matter to the Justice Department, which has convened a grand jury, and that simultaneous investigations by grand juries and administrative agencies is improper under *LaSalle, supra.*

■ As discussed previously, the mere fact that criminal and civil investigations are being conducted simultaneously is not sufficient, in and of itself, to prevent enforcement of administrative subpoenas. *N. L. R. B. v. Interstate Dress Carriers, Inc., supra.* Furthermore, the NRC contends that their investigation centers around the subject of information transfer after the accident on March 28, 1979, while the matter referred to the Justice Department (the Hartman allegations) centers around the

[1] In addition, petitioner asserts that the grand jury investigation purportedly centers on different subject matter than petitioner's investigation, as discussed more fully *infra.*

falsification of documents and information prior to the accident. Respondents submit that an individual who appeared before the grand jury reported to respondents that he had been asked several questions with respect to the accident at TMI–II. This evidence does not support the conclusion that the NRC and the grand jury are conducting investigations concerning the same matters. Even if it did, it would be of little or no consequence in light of *Interstate Dress Carriers, Inc., supra.*

Respondents further allege that the subpoenas should not be enforced because they will be of assistance in a criminal investigation and therefore not issued in good faith. As discussed in detail previously, there is no evidence that the information obtained by the NRC will be turned over to the Justice Department and ultimately to the grand jury. The purpose of the good faith inquiry is to determine "whether the agency is honestly pursuing the goals of [its statute] . . . ." *LaSalle, supra* 437 U.S. at 316, 98 S.Ct. at 2367. No evidence has been presented that would indicate plaintiff is not honestly pursuing its responsibilities.

Respondents' final contention is that the NRC already possesses the information it seeks from the subpoenas. In support of this, respondents point out that the events involving information transfer, which is the subject matter of the subpoenas, have been investigated in at least four [2] other studies, namely:

1. The Udall Report, conducted by Senator Udall, Chairman of the Subcommittee on Energy and the Environment;
2. The Presidential Commission Report (Kemeny Report);
3. The Special Inquiry Report (Rogovin Report); and
4. The NRC Report.

The NRC concedes, as it must, that these investigations concerning TMI were conducted and the reports compiled. It takes issue, however, with the assertion that these investigations and reports have adequately addressed the specific issue of information transfer. The NRC contends that the reports are vague, incomplete, and inconclusive in regard to the specific events involving the information transfer. Pointing out its ultimate responsibility for the promulgation of future guidelines on information transfer, its responsibility to impose appropriate civil penalties for all infractions of its regulations (none has been assessed by the NRC for any rule infractions involved in the information transfer), and its responsibility in determining whether or not to permit the re-opening of Unit I at TMI, the NRC contends that the final decision as to whether or not sufficient information has been developed should lie with it, since ultimate responsibility lies there also.

█ Although the court is of the opinion that substantial deference should be afforded to the NRC's opinion that it lacks sufficient information to effectively execute its many responsibilities, the court cannot ignore the requirements expressly set forth in *Powell, supra.* The role of the court in subpoena enforcement proceedings is "not that of a mere rubber stamp, but of an independent reviewing authority called upon to insure the integrity of the proceeding." *Wearly, supra* at 665.

█ Exhibit D to respondents' memorandum of points and authorities in answer to petition, filed on June 17, 1980, is a memorandum from Mitchell Rogovin and George T. Frampton, Jr., members of the Special Inquiry Group and propounders of the Rogovin Report, to John Ahearne, Chairman of the NRC. It is apparent that the Rogovin investigation did specifically include the subject of information transfer and further that the group was given "lead responsibility" in the investigation of the three specific items the present subpoenas address. The following are pertinent excerpts from that letter.

Although the Commission did not specifically direct us to determine whether

---

2. In addition, testimony indicates that Senator Hart has prepared a report which primarily

incorporates much of the information contained in the other reports.

Met Ed Officials willfully withheld information from the NRC, our contract included a directive to examine the "assessment and dissemination of information." Because we regarded the issue of intentional concealment to be an important one, and because Congressman Udall expressed an interest at an early date in having the question addressed, we considered it to be within the scope of our investigation.

During the course of our investigation, we read published comments by NRC Commissioners that this was an outstanding issue relevant to the agency's TMI enforcement responsibility upon which it was expected that the Special Inquiry Group's work would shed further light. At about the same time, we developed some new evidence in this area ourselves. As a result, we agreed with IE officials that the Special Inquiry Group would take *lead responsibility to investigate whether three specific items of information were withheld from the NRC*, and to report our factual findings in that regard for further IE action as appropriate. This report is contained in Volume II of our Report, Part III, at pp. 124–159. (emphasis added).

Further, a review of the relevant portions of the Rogovin Report indicates that at least four[3] of the five respondents were questioned by that group regarding the same subject matter addressed in the present NRC subpoenas, namely information transfer. It appears that significant information has been gathered from these four respondents regarding the specific issue of information transfer.

Petitioner argued at the evidentiary hearing that the information gathered previously was inconsistent, vague, and incomplete. It has not, however, pointed to any of these alleged inconsistencies nor explained in what manner the present information is vague or incomplete. While the court does not expect plaintiff to set out with particularity every question it anticipates asking respondents, it does expect at least a showing with some specificity that certain questions remain unresolved or certain areas are yet to be investigated. In short, the record contains only general statements by plaintiff that, if taken on their face as true, would more than likely result in this court enforcing the subpoenas. The court, however, cannot accept generalizations where specifics are required, in order to fulfill its function as more than a "mere rubber stamp."

To that end, the court will require petitioner to address, in a hearing, specifically what information it is that petitioner hopes to gain from the present subpoenas that it does not already possess or what inconsistencies exist in the present information that warrant further investigation. Respondents' counsel will be given an opportunity to refute any evidence offered, either by way of cross-examination or rebuttal witnesses. The hearing will be held on July 10, 1980, at 10:00 a. m. in Courtroom No. 2, Ninth Floor, Federal Building, Third and Walnut Streets, Harrisburg, Pennsylvania. The court is cognizant of the fact that an additional hearing will further burden petitioner in its attempts to fulfill its administrative responsibilities. This burden, however, must be weighed against the responsibilities placed upon this court to "insure the integrity of the proceeding".

---

**3.** Mehler was deposed on October 11th and 30th, 1979; Wright was interviewed on June 15, 1979; Chwastyk was deposed on October 30, 1979; and Zewe was deposed with Faust, Frederick and Scheimann on an unspecified date.