**W. L. WEARLY, Ingersoll–Rand Company and The Torrington Company, Plaintiffs,**

v.

**FEDERAL TRADE COMMISSION, Michael Pertschuk, Chairman, Calvin J. Collier, David A. Clanton, M. Elizabeth Hanford Dole, Paul Rand Dixon, Defendants.**

Civ. No. 77–1860.

United States District Court, D. New Jersey.

Dec. 9, 1980.

Bernhard, Durst & Dilts by George M. Dilts, Flemington, N. J. (Morgan, Lewis & Bockius, Washington, D. C., by Charles W. Smith, Washington, D. C., of counsel), for plaintiff, Wearly.

Carpenter, Bennett & Morrissey by David M. McCann, Newark, N. J. (Lovejoy, Wasson, Lundgren & Ashton, New York City by Joseph W. Burns, New York City, of counsel), for plaintiffs Ingersoll Rand and Torrington.

William W. Robertson, U. S. Atty. by Anne Singer, Asst. U. S. Atty., Newark, N. J., James H. Sneed, Gen. Counsel, W. Dennis Cross, Asst. Gen. Counsel, by Theodore H. Hoppock, Atty., Washington, D. C., for defendants.

## OPINION

BIUNNO, District Judge.

"How many angels can dance on the point of a very fine needle without jostling each other?"[1]

This is the sort of medieval philosophic exercise, time consuming, intractable of solution, and long antedating the analytical formulation of Parkinson's Laws, that confronts the court in the present proceeding to settle the form of order to be entered on the mandate of the Court of Appeals.

Decision in the suit was handed down here on October 18, 1978, in litigation arising out of an FTC subpoena duces tecum issued in 1976 to W. L. Wearly, Chairman of the Board of I–R, 462 F.Supp. 589 (D.N.J., 1978).

On appeal from the final judgment the Court of Appeals concluded that the judgment should be vacated and directed the complaint to be dismissed because the matter was not ripe for judicial review. Other parts of that opinion mention "whether there was jurisdiction to entertain the suit", and the denial of injunctive relief where there is "an adequate remedy at law" in proceedings to enforce an FTC subpoena. See 616 F.2d 662, at 665 [1] and [2], for example.

After the release of the Court of Appeals' opinion (as amended on denial of rehearing and rehearing en banc), plaintiffs sought certiorari, which was denied October 6, 1980, —— U.S. ——, 101 S.Ct. 81, 66 L.Ed.2d 25.

Plaintiffs then submitted a proposed order for dismissal which continued in effect the protective order provisions until vacated on FTC motion accompanied by a final enforcement order of a U. S. District Court, with evidence that all objections to the subpoena were considered and ruled on before entry of the enforcement order.

This draft was bottomed on footnotes 6 and 9 of the opinion of the Court of Appeals, which suggested that if Wearly feared disclosure by FTC of the documents in this court's custody, he might seek protective conditions to be attached to the order of dismissal. These, the Court of Appeals observed, could be effective only until such time as FTC secured an enforcement order against Wearly, with Wearly entitled to raise in the enforcement proceedings all the objections he presented here.

These footnotes draw their meaning from other parts of the opinion, like the comment that the Court of Appeals did not understand, any more than this court, FTC's reluctance to agree to an order protecting the proprietary interests without restricting the investigation, 616 F.2d at 663; the observation that FTC "precipitously moved" to enforce its subpoena in the D. C. District Court without awaiting the outcome on appeal here, 616 F.2d at 663; the FTC's "most curious stance for a governmental agency"

---

1. Attributed to ISAAC D'ISRAELI, *Curiosities of Literature: Quodlibets*, paraphrasing an idea in ST. THOMAS AQUINAS, *Summa.* See Stevenson, HOME BOOK OF QUOTATIONS (Dodd, Mead & Co., 5th Ed. 1947), p. 1904(11).

in refusing to participate in the hearings here, based on an enforcement order issued by the D. C. District Court, eventually vacated by the Court of Appeals there, in part because FTC could have counterclaimed here for enforcement since New Jersey was "not an inconvenient location for this litigation", 616 F.2d at 663–664; and the comment that unfortunate disclosures of confidential information by FTC "are the kind of governmental behavior that simply cannot be countenanced," 616 F.2d at 664, and similar evaluations and comments.

Resolution of the form of order to be entered was noticed for November 10, 1980. Plaintiffs appeared. No one for FTC responded to the call of the motion, and the court continued the motion to December 8, 1980. Meanwhile, FTC submitted a proposed order for dismissal "with prejudice", each side to bear its own costs, and no protective provisions.

Being disinclined to count non–jostling angels, this court does not pause to decide whether the controversy was not ripe, or whether it lacked jurisdiction, or whether it should not have exercised jurisdiction it had to enter nothing more than a declaratory judgment that did not restrain access to the subject documents or the continuance of the non–public investigation, and included a protective provision only because of FTC's unfathomable flat refusal to honor court orders, see 462 F.Supp. at 604–605 [8].

The reason for not deciding this point is that in either case, the directed dismissal of the complaint *cannot possibly be with prejudice*, as FTC asks.

If there be no jurisdiction here, or if the controversy be not ripe, then this court's declaratory judgment (whether it be in favor of Wearly or of FTC) would have no more force than a curbstone opinion, a law review article or a letter to the editor. Whatever it is, since it must be vacated on one of the grounds indicated, it is not any longer a decision on the merits and so the dismissal can only be *without prejudice*. Otherwise, Wearly would be robbed of the "ripe" opportunity to raise all his objections in a subpoena enforcement proceeding.

It is of interest to note, too, that this court was of the view that FTC's enforcement proceeding was a mandatory counterclaim here, see 462 F.Supp. at 605–606 [11]. The D. C. Court of Appeals was at least of the view that it was a permissive counterclaim, see 616 F.2d at 664, footnote 1. The record of the proceedings in the D. C. District Court for enforcement of the subpoena were put in evidence here. It shows that Wearly did raise there all the objections raised here, that enforcement was ordered without ruling on the merits of the objections, and that after again appearing before FTC and refusing (on the strength of this court's order) to supply the documents, further steps in the D. C. District Court led to an order holding him in contempt–an order which provided the foundation for the appeal to the D. C. Court of Appeals.

The filing of an enforcement counterclaim here would have eliminated the collateral issues which are the only ones decided so far. That was not done, and on the kind of mandate entered in this Circuit probably cannot be done except as an original proceeding not in the cause. So, Wearly is probably left to try again in a new enforcement proceeding in the D. C. District Court to raise the objections he raised there before without any ruling on the merits. The rule in this circuit is that a district court's role in an enforcement proceeding "is not that of a mere rubber stamp, but of an independent reviewing authority called upon to insure the integrity of the proceeding," and that: "In the discharge of that duty, the court has the power to condition enforcement upon observation of safeguards to the respondent's valid interests," 616 F.2d at 615 [1], citing a decision of the Court of Appeals for the Fifth Circuit.

What the rule is in the D. C. Circuit is for that Court of Appeals to decide. The decisions of this and other circuit Courts of Appeals are not binding there. See *U. S. v. R. J. Reynolds Co.*, 416 F.Supp. 316, at 320, footnote 1 (D.N.J., 1976) and cases cited there.

This intriguing and perplexing question need not be decided here, for in its brief, in

a passing footnote, FTC made reference to the "Federal Trade Commission Improvements Act of 1980", Pub.L. 96–252, Act of May 28, 1980. That Act became law two months after the published opinion of the Court of Appeals here, and somewhat four months before denial of certiorari. Whether the provisions of that Act played any part in the denial of certiorari will never be known.

In any event, sec. 3(a) of that Act amends 15 U.S.C. § 46(f) to more strictly define what FTC has no authority to make public. Sec. 4 amends 15 U.S.C. § 46 by forbidding any disclosure of information by which "line–of–business" data furnished to FTC can be identified with a particular establishment or individual.

Section 14 adds a new section dealing with confidentiality of documents and oral testimony received by FTC by compulsory process in an investigation, which sets up a custodial arrangement (somewhat like the one in the order here) to provide security. One provision establishes a mechanism by which a provider of information may designate it as "confidential" by so marking it; and if FTC is of the view that it is not, despite the marking, provision is made for notice and judicial review of the question, to restrain disclosure and to obtain a stay meanwhile. Still another provision in the section exempts from FOIA any material received by the Commission in an investigation either by compulsory process or voluntarily in place of compulsory process. The key here probably is the marking of every page claimed as "Confidential".[2]

The FTC brief merely mentions the 1980 Act in passing in a footnote; it presents no analysis which, from a brief review, suggests that the Congress may have established an adequate set of controls by statute. Whether FTC will honor the statute any more than it did the orders of this court remains to be seen.[3]

In these circumstances, the court is of the view that it should enter an order dismissing the complaint *without* prejudice to the rights of the parties on the merits, leave each side to its own costs, and say no more.

This is an odd result, in a way, because FTC's primary function was to examine the subject documents for the purposes of its investigation. Yet, though made available to it more than 3 years ago in a convenient location where all of them were ordered to be gathered, it has to this day refused to go and inspect them.

Since the complaint must be dismissed, and since FTC filed no counterclaim for enforcement, this court lacks the authority to order plaintiffs to turn over the documents. Presumably, they are free to continue as a unilateral, private security system, the controls established by the protective order, until such time as an enforcement order is entered by a court of competent jurisdiction in which the controversy is ripe.

The answer to the question opening this opinion obviously is, "Too many".

---

**2.** The legislative history contained in Senate Report 95–500 in connection with S. 1991 illuminates the views of the Congress on this and other subjects dealing with criticism of FTC, including action taken beyond the intent of Congress. The Report is worth reading as a whole, to provide context for the particular sections of interest here.

The 1980 statute seems to have some open gaps. The Congress excluded itself from the protections provided, and disclosure to State officials may entail undefinable risks, see, e. g., *Montana Const. 1972*, Art. II, sec. 9.

All of these and other unprotected perils will need to be raised in enforcement proceedings in which the issues will presumably be "ripe".

**3.** At the hearing of December 8, 1980, FTC said it would honor the directions of the Congress in the 1980 statute. It was unable to say why it did not honor this court's orders in the course of the proceeding here, although it agreed that the judicial branch is co–equal with the legislative branch.